The Connecticut Mutual Life Insurance Company *v.* Talbot *et al.*

No. 13,640.

## THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY *v.* TALBOT ET AL.

MORTGAGE.—*Equitable Assignment.*—The endorsement of a note secured by mortgage effects an equitable assignment of the mortgage.

SAME.—*Recording Assignment.—Negligence.—Estoppel.—Priority of Mortgage.*—Where the assignee of a mortgage may, under the recording acts, by procuring and putting of record an assignment, give notice of his rights, his neglect to do so will estop him from asserting the priority of his mortgage over that of a subsequent mortgagee, who took his security on the faith of a release executed by the administratrix of the original mortgagee.

SAME.—*Act of 1877.—Construction.—Extent of Application.*—The act which went into force July 2d, 1877 (sections 1093, 1094, R. S. 1881), providing for the assignment of "any mortgage of record," applies as well to mortgages then of record and theretofore equitably assigned as to those thereafter assigned.

SAME.—*Release by Administratrix.—Reliance Upon Record.—Notice.*—A subsequent mortgagee, without notice, will be justified in relying upon a release of a prior mortgage, executed by the administratrix of the prior mortgagee, entered of record four years after the act of 1877 went into force, without demanding the production of the note and mortgage and without inquiring as to the authority of the administratrix to execute the release.

SAME.—*Corporation.—Agent.—Notice.*—A finding that the agent of a corporation, who negotiated a loan of its money, acted in reliance upon a release of record of a prior mortgage, without knowledge that it had not been paid, is a sufficient finding that the corporation for which he acted had no notice.

STATUTE.—*Construction.—Retroactive Effect.*—A statute must be so construed as to make it effect the purpose for which it was enacted, and, if necessary to that end, it will be applied to past as well as to future transactions, although it does not in terms so direct, unless to do so will impair some vested right or violate some constitutional guaranty.

SAME.—*Judicial Notice.—Contemporaneous History.*—In ascertaining the intent of the Legislature in the enactment of a statute, courts will take judicial notice of such contemporaneous history as led to and probably induced the passage of the law.

From the Marion Superior Court.

*S. J. Peelle* and *W. L. Taylor*, for appellant.

*J. S. Duncan, C. W. Smith* and *J. R. Wilson*, for appellees.

MITCHELL, C. J.—The questions for decision arise upon facts specially found by the court. Those facts, so far as they are material, are as follows: On May 3d, 1871, Talbot and wife executed a mortgage, which was afterwards duly recorded, to the Thames Loan and Trust Company to secure a loan of three thousand dollars, payable on the 3d day of May, 1876. On the 31st day of January, 1874, the same mortgagors executed another mortgage conveying the same property to William H. Morrison to secure another debt of three thousand dollars. This last debt was evidenced by a promissory note payable to Morrison or order, one year after date. The mortgage recited that it was given as a security for the debt evidenced by the above mentioned note, and also to secure any renewal of the note therein described. This mortgage was also duly recorded. Before the note matured, Morrison assigned it to Tomlinson, by a written endorsement on the back thereof. There was no assignment of the mortgage, otherwise than as it was carried by the endorsement written upon the note, and there was hence nothing upon the record to indicate that the note and mortgage were not held and owned by the mortgagee. The note, thus secured and assigned, was renewed annually, the maker giving a new note at the end of each year, of like tenor as the first, payable to Tomlinson. The renewal notes were endorsed by Morrison. On the 15th day of March, 1881, Morrison died, and shortly thereafter his widow, Mary Morrison, became the duly qualified administratrix of his estate.

The debt to the trust company had become due. It had been renewed, and had fallen due a second time.

Talbot negotiated a loan of $3,000 with the Connecticut Mutual Life Insurance Company. The loan was negotiated with Mr. Moore, as agent of the insurance company. The money so negotiated for was designed to be used in paying off the debt due to the trust company and secured by the trust company mortgage above mentioned. Mrs. Morrison, as administratrix of the estate of Wm. H. Morrison, executed

a release of the Morrison mortgage. This release was executed and recorded on the 11th day of October, 1881. Tomlinson had no knowledge of the release, nor had he given authority to any one to release the mortgage. The debt held by him had not been paid. On the same day that the Morrison mortgage was released, Talbot and wife conveyed the same real estate to the insurance company as a security for the loan of $3,000, negotiated from it through its agent, Moore. The money thus borrowed was paid over to the trust company in satisfaction of the debt due it from Talbot, which indebtedness was secured by a renewal of the first mortgage taken by it on the real estate in question. Moore, who acted as the agent for the insurance company in making the loan to Talbot, had been furnished with an abstract of title to the land mortgaged some time prior to the loan, and thereby he knew of the Morrison mortgage; but at the time the loan was made to Talbot the release executed by the administratrix had been put on record. The release recited that the mortgage had been fully paid and satisfied, and Moore had no knowledge that it was not paid. The court, in its finding, draws the inference that Moore did not demand the production of the Morrison note and mortgage, nor make any inquiry as to the authority of the administratrix to execute the release.

It should be observed that at the time the trust company took its second or renewal mortgage, in 1876, Wm. H. Morrison, by an entry on the mortgage record, waived the priority of the Morrison mortgage over that last taken by the trust company. This was done without authority from Tomlinson.

Upon the facts found, the superior court was of opinion that the release and satisfaction piece, executed by Mrs. Morrison, and placed of record, was not effectual as against Tomlinson, the assignee of the Morrison note and mortgage, and it was accordingly decreed that the Morrison mortgage have priority over that of the insurance company, notwithstanding the release.

That the endorsee of a promissory note, secured by mortgage, succeeds to the benefits of the mortgage security, even though the latter be not formally assigned, is a familiar proposition.

The written endorsement of the payee on the note carries the legal title therein to the endorsee, and the mortgage, being a mere incident to, and security for, the debt, the assignee of the note becomes equitably entitled to participate in the security to the extent of his interest or ownership in the debt. The right of such an assignee to participate in the mortgage is wholly equitable, and grows out of the fact that equity regards the mortgage as being merely accessory.

It is, of course, certain that, as between the mortgagee and his assignee, and all others having notice of their respective rights, the former can do nothing to prejudice the rights of the latter after the debt has been assigned.

Whether the assignment of a mortgage was such an instrument as was entitled to be recorded prior to the act which came in force July 2d, 1877, or whether prior to that act an assignment could be so made on the record as that in either case the record would operate as notice of the assignment, and to what extent innocent purchasers and subsequent mortgagees, who advanced money on the faith of a release entered of record by a prior mortgagee, might rely upon such release, have heretofore been subjects of more or less extended discussion and consideration by this court. *Reeves* v. *Hayes*, 95 Ind. 521.

Whatever conclusion we might arrive at, as at present advised, in respect to whether or not assignments of mortgages were within the recording acts prior to July 2d, 1877, there is no room to doubt but that such assignments are affected by the act last above named. Whether or not the questions considered in *Reeves* v. *Hayes, supra*, are longer of any general importance, it is clear that they are of no practical moment as applied to the present case.

It is assumed everywhere, that if the recording acts afford

the assignee of a mortgage the opportunity of giving notice of his rights by procuring and putting of record an assignment of the mortgage, neglect on his part to do so will estop him from asserting the invalidity of a duly recorded release executed by his assignor, after an innocent purchaser has paid his money on the faith of the public records. It is settled everywhere, that unrecorded assignments of mortgages are void as against subsequent purchasers, whose interests may be affected thereby, and whose conveyances are duly recorded, provided such assignments are embraced by the recording acts. *Bacon* v. *Van Schoonhoven,* 87 N. Y. 446 ; *Decker* v. *Boice,* 83 N. Y. 215 ; *Swartz* v. *Leist,* 13 Ohio St. 419 ; *Yerger* v. *Barz,* 56 Iowa, 77 ; *Henderson* v. *Pilgrim,* 22 Tex. 464 ; Boone Mortg., section 92 ; 1 Jones Mortg., section 472 ; *Reeves* v. *Hayes, supra,* and authorities there cited.

The effect of the act of 1877, construed in connection with section 2931, was to postpone or render assignments of mortgages void as against any subsequent purchaser or mortgagee in good faith, for a valuable consideration, unless such assignments were recorded as therein provided.

It follows, that when assignments of mortgages are within the recording acts, a release executed by the person who appears by the records to be the owner of the mortgage is sufficient to protect a purchaser who has in good faith parted with his money on the faith of such a release, and without other notice than that afforded by the record. *Blunt* v. *Norris,* 123 Mass. 55.

The act which went into force July 2d, 1877 (sections 1093, 1094, R. S. 1881), provides that "Any mortgage of record, or any part thereof, may be assigned by the mortgagee, or any assignee thereof, either by an assignment entered on the margin of such record, signed by the person making the assignment and attested by the recorder, or by a separate instrument executed and acknowledged," etc. It also provides that the assignment, if by a separate instrument, may be recorded on the margin of the record where the mortgage is

recorded, or in the mortgage record of the county. And it provides, further, that, after the assignment is so made or entered of record, the mortgagor, and all other persons, shall be bound thereby. It also authorizes any assignee, or his personal representative, to release or enter satisfaction of the mortgage of record.

It is argued that, because the debt secured by the Morrison mortgage was assigned to Tomlinson before the act of 1877 took effect, the assignee was not affected by the provisions of that act, notwithstanding he accepted renewals of the note and allowed the mortgage to stand on the record in the name of his assignor for some four years after the act referred to came into force.

It is assumed that, where an equitable assignment of a mortgage had been effected prior to the enactment above mentioned, the assignee might, nevertheless, permit the legal title to the mortgage to remain of record in the original mortgagee, and that an unauthorized release by such mortgagee would be at the risk of an innocent purchaser, who relied upon the record.

This argument is supported upon the general proposition that statutes are to be construed and applied prospectively, unless a contrary intent is manifested in clear and unambiguous terms. This is undoubtedly the general rule, and it is sometimes held that, to work an exception, the intent favoring retrospective application must affirmatively appear in the words of the statute. The better rule of construction, and the rule peculiarly applicable to remedial statutes, however, is, that a statute must be so construed as to make it effect the evident purpose for which it was enacted, and if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied, although the statute does not in terms so direct, unless to do so would impair some vested right or violate some constitutional guaranty. *People* v. *Spicer*, 99 N. Y. 225; *Larkin* v. *Saffarans*, 15 Fed. Rep. 147; *Excelsior Manf'g Co.* v. *Keyser*, 62 Miss. 155;

The Connecticut Mutual Life Insurance Company *v.* Talbot *et al.*

*Baldwin* v. *City of Newark*, 38 N. J. 158; *People* v. *Clark*, 7 N. Y. 385; Bishop Written Laws, section 84.

Limitation laws which operate on subsisting contracts, and laws which regulate the registration of existing conveyances or instruments affecting titles to lands, are within the operation of this rule when a reasonable time is given within which the effect of such a statute, as applied to existing conveyances, may be avoided and rendered harmless in respect to vested rights. *Tucker* v. *Harris*, 13 Ga. 1; *Boston* v. *Cummins*, 16 Ga. 102; *Jackson* v. *Lamphire*, 3 Pet. 280; *Tarpley* v. *Hamer*, 9. S. & M. 310; Wade Retroactive Laws, section 13.

In ascertaining the intent of the Legislature in the enactment of a statute, courts will take judicial notice of such contemporaneous history as led up to and probably induced the passage of the law. *Stout* v. *Board*, etc., 107 Ind. 343.

The case of *Hasselman* v. *McKernan*, 50 Ind. 441, in which it was for the first time authoritatively declared that no statute existed in this State which made provision for the recording of assignments of mortgages, and for making such records notice, was decided at the May term, 1875. At the ensuing session of the Legislature the act under consideration was passed. No reasonable doubt can be entertained but that it was intended to remedy the defect which was declared to exist in the registry law.

The act conferred no new, nor did it affect any existing, rights. Mortgages were assignable before the enactment of the statute of 1877, but because it had been declared that there was no statute authorizing such assignments to be recorded, so as to make such records notice, it was deemed expedient to afford the means whereby assignees of real estate mortgages, as well as innocent purchasers of mortgaged real estate, might be protected. The reason and policy of the act applied with as much force to assignments such as that here involved as to those which should be made after it took effect.

The act applied by its terms to "any mortgage of record" at the time it took effect, the same as to any mortgage which might thereafter be recorded. The Morrison mortgage was a mortgage of record at the time the act in question took effect, but it had not been assigned to Tomlinson except as the endorsement of the note carried an equitable interest in the security. The act of 1877, as applied to that mortgage, and all others similarly held, impaired no existing right of any assignee; it simply enlarged the opportunities of assignees for giving notice of and protecting existing rights, and it left to each the option to procure and record an assignment of his mortgage in the manner provided, or to take the chance that his assignor, who held the legal title to his security in trust for him, would act in good faith, and not release the mortgage to his detriment.

An act can not be said to impair a security which affords the opportunity of more effectually protecting it, and which leaves it entirely at the discretion of the owner whether he will pursue it or not. *Tarpley* v. *Hamer, supra.*

A statute which has for its purpose the better security and repose of titles may postpone one who voluntarily neglects to avail himself of registry acts, which enable him to give notice to all the world of his claim, to the claim of a subsequent purchaser who acted on the faith of a public record. *Kenyon* v. *Stewart*, 44 Pa. St. 179 ; *Jackson* v. *Lamphire, supra.*

An assignee of a mortgage, who had an assignment duly acknowledged prior to the taking effect of that act, needed only to put his assignment of record within the time prescribed in section 2931, R. S. 1881, or before the intervention of an innocent purchaser for a valuable consideration. On the other hand, one who occupied the position of an equitable assignee merely had it in his power, in case the assignor of the debt refused voluntarily to make a legal assignment of the mortgage, to compel the execution of all such muniments of title as were essential to the complete protec-

tion of his rights.     *Wade* v. *Guppinger*, 60 Ind. 376; *Eichholtz* v. *Taylor*, 88 Ind. 38.

Taking into account the circumstances which occasioned the enactment of the statute under consideration, together with what appears upon the face of the act itself, and we entertain no doubt of the propriety of applying it to transactions such as that involved in the present case.   A contrary holding would produce a state of uncertainty and confusion in respect to the validity of releases of mortgages, which the Legislature intended to avoid by the act in question.   The universal rule in respect to statutes such as that under consideration is that they are to be liberally construed.   *Swartz* v. *Leist, supra; Kenyon* v. *Stewart, supra.*

It is suggested in the brief that, because the release of the Morrison mortgage appeared on its face to have been executed by the administratrix of the mortgagee, it became the duty of the subsequent mortgagee to demand the production of the note and to make inquiry as to whether or not the mortgage debt was actually paid, or whether the administratrix had authority to release the mortgage.

It is quite true, that where a mortgage appears to have been discharged by an attorney, clerk, or some one other than the mortgagee, it has been held sufficient to excite inquiry as to the reason of the unusual circumstance.   *Smith* v. *Kidd*, 68 N. Y. 130; *Harris* v. *Cook*, 28 N. J. Eq. 345; *Swarthout* v. *Curtis*, 5 N. Y. 301; Wade Notice, section 20; 2 Jones Mort., section 957.

In the present case the mortgage was released by the only person who, so far as the record disclosed, had the legal right or authority to execute a release.   The statute, section 2265, gave authority to executors or administrators to release and discharge mortgages when the debts thereby secured had been paid.   After the administratrix, thus authorized by public law, had solemnly declared over her hand and seal, in an instrument which had been delivered to and placed of record by the mortgagor, that the mortgage debt had been

fully paid and satisfied, subsequent mortgagees, who acted in good faith, without notice, had a right to rely upon the record without further inquiry. *Williams* v. *Jackson*, 107 U. S. 478; *Ogle* v. *Turpin*, 102 Ill. 148; *Bacon* v. *Van Schoonhoven, supra; Ely* v. *Schofield*, 35 Barb. 330; *Henderson* v. *Pilgrim, supra.*

The subsequent mortgagee in the present case was a corporation. The findings of the court show that the loan to Talbot was negotiated, and the transaction consummated, by and through the agency of a Mr. Moore, who acted as the agent of the corporation in negotiating the loan and in taking the mortgage. The findings show that Moore had no knowledge that the Morrison mortgage was not paid. It is suggested that this finding does not negative the idea that the insurance company may have had knowledge. As corporations can only act through agents, a finding that the agent who transacted the business in question acted without knowledge, in reliance upon the record, is a sufficient finding that the corporation for which he acted had no notice. This we say without regard to the question as to who assumes the burden of proof in a case like this.

Without considering whether or not the insurance company would be entitled upon principles of subrogation to occupy the place, and avail itself of the securities, of the trust company, whose debt was discharged by the insurance company, the conclusion follows, from what has already been said, that the judgment of the superior court must be reversed.

The judgment is accordingly reversed, with costs, with directions to the court to restate its conclusions of law, and to render judgment thereon in accordance with this opinion.

ELLIOTT, J., did not take part in the decision of this case.

Filed Dec. 21, 1887; petition for a rehearing overruled Feb. 18, 1888.