



FILED

Jun 24 2020, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-XP-673

## N.G.,

*Appellant (Petitioner)*

–v–

## State of Indiana,

*Appellee (Respondent)*

---

Argued: February 20, 2020 | Decided: June 24, 2020

Appeal from the Elkhart Superior Court, No. 20D05-1811-XP-76

The Honorable Charles C. Wicks, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 19A-XP-637

---

**Opinion by Chief Justice Rush**

Justices David, Massa, and Goff concur.
Justice Slaughter dissents with separate opinion.

**Rush, Chief Justice.**

Expungement removes the stigma associated with a criminal conviction—one of the last barriers ex-offenders face when reintegrating into society. But before filing an expungement petition, an individual must wait a set period of time after their "date of conviction."

Here, N.G. petitioned to expunge a minor felony conviction that had been converted to a misdemeanor. The relevant statute required N.G. to wait five years before seeking expungement; but, at the time of his petition, the statute wasn't clear on when the waiting period began. The trial court—believing the relevant five years hadn't elapsed—denied the petition. Then, while N.G.'s appeal was pending, the legislature amended the statute to alleviate the confusion and made the change effective immediately. Under the new version, N.G.'s expungement petition would have been granted.

We conclude that the amended statute should apply retroactively to N.G., as this application effectuates the remedial law's purpose. We thus reverse and remand.

## Facts and Procedural History

In January 2006, N.G. was working at a gas station when a patron left her credit card behind. N.G. and a coworker took the credit card and used it to make several purchases. After the victim reported the card stolen, N.G. was arrested. He admitted to the offense and told officers where they could find the stolen card and purchased items.

As a result, N.G. pleaded guilty to Class D felony theft, with sentencing left to the court's discretion. At sentencing, N.G.'s counsel, the investigating officer, and the State all recommended that the trial court reduce N.G.'s conviction to a misdemeanor. But the court declined to do so, reasoning that N.G. used the credit card "not once but four times." So, in April 2006, the court entered judgment of conviction for the felony.

Over the next seven years, N.G. petitioned eleven times to have his felony conviction converted to a misdemeanor. Though the State didn't

object on multiple occasions, the court denied each request. Even when the victim consented to modification, the court still refused to convert the felony. Eventually, when N.G.'s counsel asked what it would take to get a petition granted, the judge responded, "[I]f he can go ten years without another crime we'll take another look at it." N.G. did just that. In August 2016—more than ten years after the felony conviction—the court granted N.G.'s twelfth petition, converting the Class D felony to a Class A misdemeanor.

Two years later, N.G. sought to expunge the conviction under Indiana Code section 35-38-9-2, which applies to a person convicted of a minor felony—Class D or Level 6—that was subsequently reduced to a misdemeanor. The statute required a petitioner to wait five years from "the date of conviction" before filing, but the law referenced only "the misdemeanor" conviction. I.C. § 35-38-9-2(c) (2018). The trial court denied N.G.'s petition, reasoning that his "date of conviction" was when the felony was converted and thus the five years had not yet passed.

N.G. subsequently filed a motion to correct error, arguing that his "date of conviction" was actually over a decade earlier, when he was convicted of the felony. After a hearing, the court denied the motion. N.G. appealed, and a divided panel of our Court of Appeals affirmed. *N.G. v. State*, 132 N.E.3d 51, 57 (Ind. Ct. App. 2019).

N.G. petitioned for transfer, which we granted, vacating the Court of Appeals decision. Ind. Appellate Rule 58(A). A few weeks later, the General Assembly introduced Senate Bill 47, which in part sought to amend Indiana Code section 35-38-9-2—the misdemeanor expungement statute under which N.G. filed his petition. S.B. 47, 121st Gen. Assemb., 2d Reg. Sess. (Ind. 2020). The revision clarified when the five-year waiting period would begin. Though the bill was pending when we held oral argument, both parties acknowledged that, under the proposed change, N.G. would be entitled to expungement. The bill subsequently passed, with the relevant amendment effective immediately. *See* Pub. L. No. 55-2020, § 9, 2020 Ind. Acts 286, 290 (codified as amended at I.C. § 35-38-9-2(c)). Due to these unique circumstances, we now consider, *sua sponte*, whether the amendment applies retroactively to N.G.

# Discussion and Decision

Absent explicit language to the contrary, statutes generally do not apply retroactively. *E.g.*, *Guzzo v. Town of St. John*, 131 N.E.3d 179, 180 (Ind. 2019). But there is a well-established exception for remedial statutes. *See Martin v. State*, 774 N.E.2d 43, 44 (Ind. 2002). One line of remedial statutes are those enacted to cure a defect or mischief in the prior law. *Id.*; *Remedial Statute*, Black's Law Dictionary 1634 (10th ed. 2014). Yet even when the legislature passes such a law, retroactivity is permissive, not mandatory. *State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005).

Though we have often said that remedial statutes will apply retroactively only if "there are strong and compelling reasons," this determination ultimately hinges on the objective behind the new law. *See Bourbon Mini–Mart, Inc. v. Gast Fuel & Servs., Inc.*, 783 N.E.2d 253, 260 (Ind. 2003). Indeed, our job is to construe a remedial statute in a way that effectuates "the evident purpose for which it was enacted." *Conn. Mut. Life Ins. Co. v. Talbot*, 113 Ind. 373, 378, 14 N.E. 586, 589 (1887). And when that purpose is served by retroactivity, "strong and compelling reasons" exist.

For example, in *Martin v. State*, we found that statutory amendments were remedial and applied them retroactively to "carry out their legislative purpose." 774 N.E.2d at 45. There, the question was whether Martin could receive credit for time served on home detention as a condition of his probation. *Id.* at 44. The relevant statutes were silent on the matter, and there was a conflict of authority on the issue within our Court of Appeals. *Id.* at 44–45. While Martin's appeal was pending, the legislature responded by revising the statutes to explicitly provide probationers with home-detention credit. *Id.* at 44. We found those amendments remedial, as "they were intended to cure a defect that existed in prior statutes." *Id.* at 45. And so, to effectuate the legislative purpose behind the amendments, we applied them retroactively to Martin. *Id.*

Distilling these legal principles, we employ a two-step analysis to determine whether an otherwise prospective statute applies retroactively. We first decide whether the relevant law is remedial. If so, we then

consider whether retroactive application would effectuate the statute's legislative purpose.[1]

Here, the amendment to the misdemeanor expungement statute is remedial—it cured a defect in the prior law. And, given the broad goals behind Indiana's expungement scheme, coupled with the urgency with which the legislature addressed this issue, we find that applying the remedial law retroactively to N.G. effectuates its purpose.

## I. The amendment to the misdemeanor expungement statute is remedial.

Individuals seeking expungement must meet several conditions. At issue here is that, before filing a petition, the person must wait a number of years after the "date of conviction." I.C. §§ 35-38-9-2(c), -3(c), -4(c), -5(c). For those seeking expungement of a minor felony—Class D or Level 6— that was subsequently reduced to a misdemeanor, the waiting period is five years. I.C. § 35-38-9-2(c). But, until recently, it wasn't clear when that waiting period began.

The previous statute stated, "Not earlier than five (5) years after the date of conviction . . . the person **convicted of the misdemeanor** may petition a court to expunge all conviction records . . . ." I.C. § 35-38-9-2(c) (2018) (emphasis added). Yet a person like N.G., with a reduced felony conviction, has never been **convicted** of a misdemeanor; rather, the minor felony was **converted** to a misdemeanor. *See* I.C. § 35-50-2-7(d). Herein lies the confusion: does the five-year waiting period begin from the felony conviction date or from the conversion date?

This ambiguity led to the split decision below. The Court of Appeals majority reasoned that the waiting period began when N.G.'s minor felony was converted to a misdemeanor. *N.G.*, 132 N.E.3d at 56. Judge Baker disagreed, believing that the waiting period ran from the date of N.G.'s felony conviction. *Id.* at 57–58 (Baker, J., dissenting). Yet, the entire

---

[1] We note that, within this analysis, retroactive application is not appropriate if it would violate a vested right or constitutional guaranty. *Martin*, 774 N.E.2d at 44. These concerns are not implicated here.

panel agreed that the majority's interpretation created an "incongruity." *Id.* at 57 (majority opinion); *id.* at 57–58 (Baker, J., dissenting). Under its reasoning, an individual with a felony conviction who never sought reduction could seek expungement eight years **after their conviction date**. *See* I.C. § 35-38-9-3(c). But if the same person successfully had their felony conviction reduced to a misdemeanor, they would need to wait longer—at least eight years **after completing their sentence**—before seeking expungement. *See* I.C. §§ 35-50-2-7(d), 35-38-9- 2(c). This incongruity is one that the panel urged our legislature to address. *N.G.*, 132 N.E.3d at 57; *id.* at 58 n.7 (Baker, J. dissenting).

Within a few months, the General Assembly seemingly heeded the suggestion by amending the misdemeanor expungement statute. *See* § 9, 2020 Ind. Acts at 290. The revised version—enacted after we granted transfer—now provides that a person can seek expungement "five (5) years after the date of conviction . . . for the misdemeanor **or the felony reduced to a misdemeanor**." I.C. § 35-38-9-2(c) (2020) (emphasis added). In other words, the legislature clarified that, for individuals like N.G., the five-year waiting period runs from the date of the minor felony conviction.

We find that this amendment is remedial: it cured a mischief that existed in the prior statute, namely, confusion on when the waiting period begins for certain ex-offenders seeking expungement. We now determine whether the remedial statute should apply retroactively to N.G.

## II. The purpose of the remedial law is realized through retroactive application to N.G.

Retroactively applying the remedial law to N.G. carries out the purpose for which it was enacted. We reach this conclusion for two interrelated reasons.

First, retroactive application aligns with the general objectives underlying Indiana's expungement scheme. Our legislature enacted new expungement statutes in 2013 with the goals of providing broader expungement availability and giving ex-offenders relief from the stigma

associated with past criminal behavior—a second chance. *See* Pub. L. No. 159-2013, 2013 Ind. Acts 1631; *Allen v. State*, 142 N.E.3d 488, 491 (Ind. Ct. App. 2020). These goals are realized by retroactively applying the remedial amendment to N.G. so that he gets his second chance. Indeed, he committed a minor felony over fourteen years ago and has been a law-abiding citizen ever since.

Second, this amendment is unique. Since the legislature enacted the expungement statutes, it has modified them nearly every year. *See* Pub. L. No. 219-2019, §§ 5–16, 2019 Ind. Acts 2697, 2700–19; Pub. L. No. 95-2017, § 2, 2017 Ind. Acts 681, 685–86; Pub. L. No. 198-2016, §§ 671–72, 2016 Ind. Acts 2399, 2880–84; Pub. L. No. 142-2015, 2015 Ind. Acts 1263; Pub. L. No. 181-2014, §§ 3–17, 2014 Ind. Acts 2291, 2293–2312. But this particular revision is notable—it is the first since 2014 to be designated effective upon passage. This urgency shows the legislature's desire to quickly cure the defect in the prior statute. *See Boston v. State*, 947 N.E.2d 436, 441–42 (Ind. Ct. App. 2011).

In short, we find that the remedial amendment is aimed at making expungement immediately available for individuals who (1) successfully petition for conversion of a minor felony to a misdemeanor and (2) wait five years from their felony conviction date before seeking expungement. To effectuate that purpose, we apply the remedial law retroactively to N.G.

## Conclusion

We reverse the trial court and remand with instructions to grant N.G.'s expungement petition.


David, Massa, and Goff, JJ., concur.
Slaughter, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT
Mark D. Altenhof
Goshen, Indiana

Elizabeth A. Bellin
Bellin Law Office Elkhart, Indiana


ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana


ATTORNEY FOR AMICUS CURIAE INDIANA UNIVERSITY ROBERT
H. MCKINNEY SCHOOL OF LAW CIVIL PRACTICE CLINIC
Carrie A. Hagan
Director, Civil Practice Clinic

Brendan Haile
Sherrell Scott
Elizabeth Whitaker
Grace Dillow
Haylie McCracken
Katherine Bender
Natalie Gaynier
Certified Legal Interns
Indiana University Robert H. McKinney School of Law
Indianapolis, Indiana

**Slaughter, J., dissenting.**

For two reasons, I respectfully dissent from the Court's decision to apply a recent statutory amendment to N.G.'s expungement petition. First, N.G. expressly disclaimed application of the amended statute and asked that we review his petition under the statute in effect when he sought expungement. Second, the amended statute does not say it applies retroactively; it says only that it is "effective upon passage". 2020 Ind. Acts 290. Given our presumption that legislation applies prospectively, the phrase "effective upon passage" is presumed to mean "has prospective effect upon passage". I would adopt the interpretive rule that legislation applies only prospectively unless it includes a plain statement providing for retroactive effect.

In lieu of such a clear, easy-to-apply rule, our case law requires that we determine the subjective intent underlying legislative enactments. First, we ask whether the legislature intended a statute to be remedial. Next, we try to discern the statute's objectives. And, last, we ask whether applying the statute to a pending case effectuates the legislative purpose. The problem with this analysis is that it requires us to speculate about legislative motives. But whatever those are—and often they are elusive—they are not the law. What qualifies as law is a statute's enacted text. Only the text is subject to the twin constitutional requirements of bicameralism and presentment. See Ind. Const. art. 4, § 18; *id*. art. 5, § 14(a).

The better interpretative approach looks not to what the legislature thought but to what it said. Under such a plain-statement rule, courts would no longer have to guess whether an amendment was intended to clarify the original statute or to change the law going forward by imposing a new standard in future cases. Instead, courts would pose a single question: Does the legislation plainly say it applies to pending cases? If it does, then it does. If it doesn't, then it doesn't. Compare Ind. Code § 13-12-2-2 ("The amendment of IC 13-11-2-265(b) by P.L. 183-2002 applies retroactively to July 1, 1996."), and *id*. § 35-38-6-1(f) ("This subsection applies retroactively to any request for information, discovery request, or proceeding, no matter when made or initiated."), with *id*. § 6-2.5-1-21(d) ("This section applies only to leases or rentals entered into after

June 30, 2003, and has no retroactive effect on leases or rentals entered into before July 1, 2003.").

On March 18, 2020, while N.G.'s petition was pending, the disputed amendment to the expungement statute became law. 2020 Ind. Acts 286. By its terms, the amendment took effect upon passage. *Id*. at 290. The amendment said nothing about applying to petitions filed before the effective date. Given this silence—the antithesis of a plain statement—I would not apply the amended statute to N.G.'s petition. Instead, and as N.G. requests, I would review his petition under the previous statute. Applying that statute, I would affirm the trial court's denial of his petition for the same reasons Judge Crone recites in his thoughtful opinion. *N.G. v. State*, 132 N.E.3d 51, 52–57 (Ind. Ct. App. 2019), vacated. In my view, that opinion reflects the better, more faithful interpretation of the statute in effect when N.G. sought expungement.