



FILED

Feb 24 2025, 3:23 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-CR-288

## Johnny Webster Brown,
*Appellant (Defendant below),*

—v—

## State of Indiana,
*Appellee (Plaintiff below).*

---

Argued: October 10, 2024 | Decided: February 24, 2025

Appeal from the Marion Superior Court
No. 49D28-2003-FC-9524
The Honorable Barbara Crawford, Senior Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-CR-330

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa and Molter concur.
Justice Slaughter concurs in part and in the judgment with separate opinion.
Justice Molter concurs with separate opinion in which Justice Massa joins.

**Goff, Justice.**

In a series of cases, our appellate courts identified a jurisdictional gap that prevented the State from prosecuting an individual who allegedly committed child molesting as a minor but was not waived into adult court before turning twenty-one. This jurisdictional gap prevented (1) the juvenile court from hearing the case because the individual was twenty-one or older, (2) the juvenile court from waiving the case to adult court because the juvenile court lost jurisdiction—and thus the ability to waive to adult court—when the individual turned twenty-one, and (3) the adult court from hearing the case directly because adult courts do not have jurisdiction over delinquent acts committed by minors. Johnny Brown fell into this gap, so the trial court did not have subject-matter jurisdiction when Brown was convicted of Class C felony child molesting. But in 2023, while Brown's case was pending on appeal, the General Assembly passed Public Law No. 115-2023 (or the Amendments), to amend the jurisdiction statutes and close the gap. From our reading of the Amendments, we conclude that even if the Amendments are remedial, the General Assembly did not intend to apply them retroactively to pending cases. We thus reverse Brown's conviction and remand with instructions to dismiss for lack of subject-matter jurisdiction.[1]

# Facts and Procedural History

Johnny Brown was born on August 27, 1998. On August 26, 2019, the day before he turned twenty-one years old, the State filed a delinquency petition in juvenile court alleging that sometime between June 1, 2015, and August 31, 2016, Brown committed a delinquent act that would be the offense of child molesting if he had been an adult at the time. The juvenile

---

[1] Because we decline to apply the Amendments retroactively and thus reverse Brown's conviction, we do not address Brown's arguments that retroactive statutory amendments can never cure a lack of subject-matter jurisdiction, that retroactive application of the Amendments violates the ex post facto clause of the U.S. Constitution and Indiana Constitution, that the trial court admitted improper hearsay testimony over objection, and that there was insufficient evidence to support Brown's conviction.

court authorized the filing of the petition and conducted an initial hearing on the same date.

On September 19, 2019, once he turned twenty-one, Brown filed an objection to the juvenile court's exercise of jurisdiction which the court denied. Brown requested leave to file an interlocutory appeal, but the juvenile court denied his motion.

On December 19, 2019, the State filed a motion for the juvenile court to waive juvenile jurisdiction under Indiana Code section 31-30-3-2 and Indiana Code section 31-30-3-5. On March 2, 2020, the juvenile court held a hearing on waiver, and Brown renewed his objection to the exercise of jurisdiction because he was twenty-one. The juvenile court granted the State's motion to waive Brown into adult court. The State filed an information in the adult court alleging that Brown committed Class C felony child molesting between July 1, 2013, and February 28, 2016. The court held a jury trial on November 14 and 15, 2022, and the jury returned a verdict finding Brown guilty as charged.

Brown filed a motion to correct error challenging the adult court's jurisdiction. He argued that because he was over twenty-one on the date of the waiver hearing, the juvenile court lacked subject-matter jurisdiction and thus the adult court never had jurisdiction. *See D.P. v. State*, 151 N.E.3d 1210, 1212, 1214 (Ind. 2020). The court denied Brown's motion and sentenced him to a term of four years. The court gave Brown credit for time served and suspended the remainder of his sentence to probation.

Brown appealed, again arguing that the adult court lacked subject-matter jurisdiction. In response, the State cited the Amendments authorizing adult-court jurisdiction and argued that the Amendments are remedial and apply retroactively. In his reply, Brown argued that the Amendments were neither remedial nor appropriate for retroactive application, and retroactive application would violate the ex post facto clause of the U.S. Constitution and Indiana Constitution.

The Court of Appeals reversed Brown's conviction, holding that retroactive application of the Amendments would violate the prohibition against ex post facto laws under the U.S. Constitution. *Brown v. State*, 235

N.E.3d 213, 220–21 (Ind. Ct. App. 2024). The Court of Appeals relied on *Stogner v. California*, in which the U.S. Supreme Court held that applying a new statute of limitations to a defendant after the previous statute of limitations had expired "aggravated" the crime and violated the ex post facto clause. *Id.* at 219–20 (quoting 539 U.S. 607, 613 (2003)). The Court of Appeals concluded that once Brown turned twenty-one and had not been waived into adult court, he no longer faced any liability for an act of child molesting he allegedly committed as a minor. *Id.* at 220. Retroactive application of the Amendments, the panel explained, would thus punish Brown for an act that he could not have been punished for before the Amendments were enacted. *Id.*

The State petitioned for transfer to this Court, which we granted, vacating the Court of Appeals' opinion under Indiana Appellate Rule 58(A).

## Standard of Review

Where the facts are not in dispute, subject-matter jurisdiction is a pure question of law that we review de novo. *D.P.,* 151 N.E.3d at 1213 (citing *Citizens Action Coal. of Ind. v. Koch*, 51 N.E.3d 236, 240 (Ind. 2016)). Likewise, we review interpretations of statutes de novo. *Id.* (citing *City of New Albany v. Bd. of Comm'rs of Cnty. of Floyd*, 141 N.E.3d 1220, 1223 (Ind. 2020)).

## Discussion and Decision

We first consider whether the trial court had subject-matter jurisdiction at the time of Brown's trial. We conclude that it did not because Brown fell into the jurisdictional gap identified by our appellate courts. Next, we consider whether the Amendments enacted while Brown's case was pending on appeal apply retroactively here. We conclude that even if the Amendments are remedial, there are no "strong and compelling reasons" to apply them retroactively because the General Assembly did not intend retroactive application. *See N.G. v. State*, 148 N.E.3d 971, 974 (Ind. 2020)

(internal quotation marks omitted). Because there is no subject-matter jurisdiction in Brown's case, his conviction is void.

# I. At the time of Brown's trial, the court lacked subject-matter jurisdiction.

Juvenile courts are courts of limited subject-matter jurisdiction and can only exercise jurisdiction over cases permitted by statute. *D.P.*, 151 N.E.3d at 1213 (citing *C.E.K., II v. State*, 928 N.E.2d 258, 259 (Ind. Ct. App. 2010)). Juvenile courts have "exclusive" subject-matter jurisdiction over proceedings in which a "child" is alleged to be delinquent. Ind. Code § 31-30-1-1(a)(1). A "child" for juvenile law purposes is (1) a person less than eighteen; (2) a person eighteen, nineteen, or twenty and who either is charged with a delinquent act committed before the age of eighteen or has been adjudicated a child in need of services before eighteen; or (3) a person less than twenty-one and who has allegedly committed what would be murder when less than eighteen. I.C. § 31-9-2-13(d). A juvenile court may also waive jurisdiction in certain cases to a court that would have had jurisdiction if the act had been committed by an adult. *See* I.C. ch. 31-30-3. But in recent cases, our appellate courts identified a gap in the juvenile-jurisdiction and waiver statutes that prevented the State from prosecuting certain defendants who allegedly committed child molesting as minors but were not waived to adult court before turning twenty-one.

In the first of these cases, *M.C. v. State*, the State attempted to file a delinquency petition in juvenile court against M.C. alleging that M.C. committed acts of child molesting between the ages of fourteen and eighteen. 127 N.E.3d 1178, 1179 (Ind. Ct. App. 2019). But M.C. was twenty-two years old when the State tried to file its petition, so the court held that the juvenile court did not have jurisdiction and the case was dismissed. *Id.* at 1181*; see also* I.C. § 31-9-2-13(d)(2) (2019) (defining a "child," for "**purposes of the juvenile law**" as a person "who is **eighteen (18), nineteen (19), or twenty (20) years of age**" and who either "is charged with a delinquent act committed before the person's eighteenth birthday"

or adjudicated a CHINS before their eighteenth birthday) (emphases added).

Next, in *D.P.*, a similar situation arose where the State filed juvenile-delinquency petitions against two individuals who were twenty-one or older but committed acts of child molesting while they were under the age of eighteen. 151 N.E.3d at 1212. The State then argued for waiver from the juvenile court to adult court. *Id.* This Court concluded that because the juvenile court did not have jurisdiction over these individuals once they turned twenty-one, the juvenile court did not have jurisdiction to waive the cases to adult court either. *Id.* at 1214, 1217; *see* I.C. § 31-9-2-13(d) (2020).

Finally, in *State v. Neukam*, the State alleged that the defendant committed child molesting both before and after he turned eighteen. 189 N.E.3d 152, 153 (Ind. 2022). The State filed charges in adult court for the adult acts and sought to add the juvenile acts. *Id.* But this Court held that an adult court does not have jurisdiction over delinquent acts. *Id.* at 157. As a result of this jurisdictional gap, an individual who commits acts of child molesting as a minor but is not waived into adult court before turning twenty-one cannot be prosecuted in either juvenile court or adult court. *Id.* at 153.

At the time of his trial in 2022, Brown fell into this jurisdictional gap. Brown was twenty years old when the State filed a juvenile-delinquency petition in juvenile court. But as soon as he turned twenty-one the next day, the juvenile court lost jurisdiction. *See* I.C. § 31-9-2-13(d)(2) (2022). Because the juvenile court lost jurisdiction, its subsequent waiver into adult court was ineffective. *See D.P.*, 151 N.E.3d at 1217. Brown therefore fell into the jurisdictional gap identified by our caselaw. But that conclusion doesn't end our inquiry.

## II. The Amendments do not apply retroactively to Brown's case.

While Brown's case was pending on appeal, the General Assembly amended the juvenile-jurisdiction statutes to close the jurisdictional gap. Under the amended law:

> A court having adult criminal jurisdiction, and not a juvenile court, has jurisdiction over a person who is at least twenty-one (21) years of age for an alleged offense:
> > (1) committed while the person was a child; and
> > (2) that **could have been waived** under IC 31-30-3.

Pub. L. No. 115-2023, § 7, 2023 Ind. Acts 1216, 1225 (codified at I.C. § 31-30-1-4(d) (2024)) (emphasis added). The Amendments also modified Indiana Code section 31-37-1-2 to provide:

> A child commits a delinquent act if, before becoming eighteen (18) years of age, the child commits a misdemeanor or felony offense, except for an act committed by a person over which the juvenile court lacks jurisdiction under IC 31-30-1.

Pub. L. No. 115-2023, § 9, 2023 Ind. Acts at 1227.

Thus, under the Amendments, the State may file charges directly in an adult court against an individual who is at least twenty-one years old for acts committed before turning eighteen if the juvenile court could have waived jurisdiction had the State brought a timely delinquency petition in juvenile court. The State argues the Amendments should be applied to Brown and would give the adult court jurisdiction because Brown committed the offense before he turned eighteen, and he could have been

waived to adult court under Indiana Code section 31-30-3-2 if the juvenile court still had jurisdiction.

### A. We question whether the Amendments are remedial.

Absent express language to the contrary, statutes generally don't apply retroactively. *N.G.*, 148 N.E.3d at 973 (citing *Guzzo v. Town of St. John*, 131 N.E.3d 179, 180 (Ind. 2019)). But there is an exception for remedial statutes. *Id.* A "remedial statute" is a "statute enacted to correct one or more defects, mistakes, or omissions." *Remedial Statute*, Black's Law Dictionary 1634 (10th ed. 2014). But when the legislature passes a remedial law, retroactivity is permissive, not mandatory. *N.G.*, 148 N.E.3d at 973 (citing *State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005)). "[S]uch laws are normally to be applied prospectively absent strong and compelling reasons." *Pelley*, 828 N.E.2d at 920 (quoting *Gosnell v. Ind. Soft Water Serv., Inc.*, 503 N.E.2d 879, 880 (Ind. 1987)). When the "evident purpose" of the remedial statute is served by retroactivity, "strong and compelling reasons" exist. *N.G.*, 148 N.E.3d at 974 (quoting *Conn. Mut. Life Ins. Co. v. Talbot*, 14 N.E. 586, 589 (1887)). But retroactive application is not appropriate if it would violate a vested right or a constitutional guarantee. *Id.* at 974 n.1 (citing *Martin v. State*, 774 N.E.2d 43, 44 (Ind. 2002)).

The State argues the Amendments here are remedial because they were intended to cure a "mischief in the prior law," namely the jurisdictional gap that prevented the State from prosecuting serious violations of criminal law "through the luck of the draw." Appellee's Br. at 19. In *Neukam*, we definitively identified the existence of the jurisdictional gap and concluded the gap was one "only the legislature can close." 189 N.E.3d at 153. The General Assembly acted in the first regular session after *Neukam* was decided by passing the Amendments. This was not a situation where the General Assembly was making a change or reversal in our policy on holding individuals accountable for child molesting. *Cf. Lawrence v. State*, 214 N.E.3d 361, 363 (Ind. Ct. App. 2023) (holding that Indiana's elimination of the licensure requirement to carry a handgun was not remedial in nature but rather was a reversal of course by the legislature that signaled a "major change in Indiana's policy on

handguns"). Considering the fact that our statute of limitations allows the State to prosecute an act of child molesting at any point until the victim turns thirty-one years old, *see* I.C. § 35-41-4-2(e), the General Assembly likely never intended for the jurisdictional gap to exist. Therefore, the Amendments were arguably intended to address a "defect" in the law that prevented serious criminal conduct from being prosecuted.

But the Amendments do more than just close the jurisdictional gap. The Amendments added several provisions that significantly changed how courts handle various aspects of a case with an adult defendant who committed the charged offenses as a minor. For example, a court must find by "clear and convincing evidence" the defendant is likely to repeat an act of child molesting before being designated a "sex offender," and the Amendments give the defendant the right to a new sentencing mitigator. Pub. L. No. 115-2023, §§ 1, 10, 2023 Ind. Acts at 1218, 1230 (codified at I.C. §§ 11-8-8-4.5(b)(2)(C), (c); I.C. § 35-38-1-7.1(b)(14)). The "defect" addressed by the Amendments involved a significant rewriting of the applicable jurisdictional statutes and added in ameliorative provisions. If the Amendments were retroactively applied to confer jurisdiction on the trial court, the additional substantive changes would have to apply retroactively too. *See* Appellant's Reply Br. at 13. Because of these significant changes made by the Amendments, they may not be simply "remedial." *See Pelley*, 828 N.E.2d at 919 (concluding that it was "not at all clear" if the statute at issue was remedial because although it was enacted in response to a Court of Appeals' decision, it was also enacted as part of a broader scheme to regulate social workers as professionals).

## B. Even if the Amendments are remedial, we find it unlikely the General Assembly intended retroactive application.

Even assuming the Amendments are remedial, "retroactive application is the exception, and such laws are normally to be applied prospectively absent strong and compelling reasons." *Id.* at 920 (quoting *Gosnell*, 503 N.E.2d at 880). And though "strong and compelling reasons" exist when retroactive application carries out the legislation's purpose, *N.G.*, 148

N.E.3d at 974 (quoting *Talbot*, 14 N.E. at 589), we conclude, from our reading of the applicable statutory language, that the General Assembly did not intend to apply the Amendments retroactively.

The negative-implication canon—also known by the Latin phrase *expressio unius est exclusio alterius*—means "the expression of one is the exclusion of another." *Garner v. Kempf*, 93 N.E.3d 1091, 1097 (Ind. 2018) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012)). The canon applies to an "associated group or series," and depends highly on context. *United States v. Vonn*, 535 U.S. 55, 65 (2002); *Garner*, 93 N.E.3d at 1097. Public Law No. 115-2023 includes text from previous amendments to the juvenile-jurisdiction statutes where the General Assembly provided clear statements expressly specifying that those amendments applied retroactively to pending cases. *See, e.g.*, Pub. L. No. 115-2023, § 5, 2023 Ind. Acts at 1223 (codified at I.C. § 31-30-1-0.1) (stating that the amendments made to section 1(a) of the chapter on juvenile court jurisdiction "by P.L.217-2001 **apply to all proceedings pending** under IC 31-34 on July 1, 2001" and "[t]he amendments made to section 2.5 of this chapter by P.L.131-2009 apply to **proceedings pending** on or initiated on or after May 12, 2009") (emphases added). By contrast, the General Assembly did not provide a clear statement specifying that the amendments made by Public Law No. 115-2023 should apply retroactively. The expression of retroactive application of other amendments related to juvenile-court jurisdiction, but not the Amendments here, suggests that the General Assembly did not intend to apply them retroactively. *See State v. Am. Family Voices, Inc.*, 898 N.E.2d 293, 298 (Ind. 2008) (concluding defendants were not exempt from the Indiana Autodialer Law because, despite crafting explicit exemptions to the law in other statutes, the legislature had not done so for defendants there).

We also follow the "familiar canon of statutory interpretation that statutes should be interpreted so as to avoid constitutional issues." *Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 396 (Ind. 2018) (quoting *City of Vincennes v. Emmons*, 841 N.E.2d 155, 162 (Ind. 2006)). Invoking *Stogner*, Brown argues that retroactive application of the Amendments violates the ex post facto clause of the U.S. Constitution and the Indiana Constitution. Though

we question *Stogner*'s applicability, the Amendments also allow the State to directly file in adult court without seeking waiver in juvenile court, effectively reclassifying certain delinquent acts as criminal offenses. Indiana's juvenile system is designed to rehabilitate youthful offenders, *see N.L. v. State*, 989 N.E.2d 773, 778 (Ind. 2013), so waiver requires considerations such as whether "the child is beyond rehabilitation under the juvenile justice system" and whether "it is in the best interests of the safety and welfare of the community that the child stand trial as an adult," I.C. §§ 31-30-3-2(4), (5). By reclassifying certain delinquent acts as criminal offenses, the Amendments remove the possibility of a more lenient consequence, potentially resulting in an ex post facto violation. *See Lindsey v. Washington,* 301 U.S. 397, 400–01 (1937) (finding an ex post facto violation where a statutory amendment removed the possibility of a sentence less than the maximum). Therefore, there is a close enough constitutional issue that we can avoid completely by interpreting the statute to apply only prospectively. *See Martin*, 774 N.E.2d at 44 (stressing that retroactive application is not appropriate if it would violate "a vested right or constitutional guarant[ee]").

In general, "[s]tatutes are to be given prospective effect only, unless the legislature unequivocally and unambiguously intended retrospective effect as well." *Pelley*, 828 N.E.2d at 919 (citing *Bd. of Dental Examiners v. Judd*, 554 N.E.2d 829, 832 (Ind. Ct. App. 1990)). Given the evidence suggesting that the General Assembly did not intend to apply the Amendments to pending cases, we conclude the Amendments do not apply retroactively.

## Conclusion

When Brown turned twenty-one and had not been waived from juvenile court to adult court, he fell into the jurisdictional gap identified in *M.C.*, *D.P.*, and *Neukam.* While his case was pending on appeal, the General Assembly passed the Amendments to give the adult court jurisdiction, but we conclude that the Amendments do not apply retroactively to pending cases. Because Brown's trial was conducted without subject-matter jurisdiction, his conviction is void. We thus reverse

his conviction and remand with instructions to dismiss.

Rush, C.J., and Massa and Molter, JJ., concur.
Slaughter, J., concurs in part and in the judgment with separate opinion.
Molter, J., concurs with separate opinion in which Massa, J., joins.

ATTORNEYS FOR APPELLANT
Jan B. Berg
Indianapolis, Indiana

Talisha R. Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

Angela Sanchez
Deputy Attorney General
Indianapolis, Indiana

**Slaughter, J., concurring in part and in the judgment.**

I agree with much of the Court's opinion—specifically, that:

- the juvenile court lost jurisdiction over defendant, Johnny Brown, when he turned twenty-one years of age;

- the juvenile court's subsequent waiver of Brown into adult court was ineffective because the juvenile court had already lost jurisdiction over him;

- the adult court lacked jurisdiction to adjudicate Brown's criminal case because its jurisdiction derived from that of the juvenile court, and the juvenile court could not transfer jurisdiction it no longer had;

- the legislature's "fix" to close this jurisdictional gap does not apply retroactively to Brown's criminal case, which was pending when the statutory fix took effect;

- the legislature's fix applies only prospectively because it did not state otherwise; thus

- Brown's conviction cannot stand, and the State's case against him must be dismissed on jurisdictional grounds.

If this were the entirety of the Court's opinion, I would join it in full. Instead, I write separately because the Court does not end its analysis there. It goes on—unnecessarily, in my view—to apply our Court's retroactivity test from *N.G. v. State*, 148 N.E.3d 971 (Ind. 2020). Respectfully, I continue to view that test as misguided for reasons I set out in my separate opinion in *N.G.*, *id*. at 976 (Slaughter, J., dissenting).

As today's opinion recounts, *N.G.* requires that we ask (among other things) whether a statutory amendment is remedial. *Ante*, at 8–9. I would have thought it obvious that the disputed amendments here are remedial: they were designed to fix—to remedy—the jurisdictional gap we identified in *D.P. v. State*, 151 N.E.3d 1210, 1216–17 (Ind. 2020), and *State v. Neukam*, 189 N.E.3d 152, 153 (Ind. 2022), and that exists here. Yet today's Court doubts that the disputed amendments are remedial and so does not

apply them retroactively, *ibid.*, leaving me unsure what remedial even means in this context.

As I explained in *N.G.*, the clearest test of retroactivity does not seek to divine legislative "purpose" or "intent" (as if 150 legislators all share the same purpose or intend the same thing) or assess whether an enactment is "remedial" (whatever that means). *N.G.*, 148 N.E.3d at 976 (Slaughter, J., dissenting). The better approach is simply to ask whether the enactment tells us that it applies retroactively. If it says it applies to cases pending on its effective date, then it does. And if it does not say that, then it does not. A plain-statement requirement should be our default rule. It is easy to understand and apply. And it conveys in no uncertain terms how the legislature can overcome the judicial presumption that an enactment applies only prospectively.

The legislature, for its part, knows how to apply new statutes (or amendments to statutes) to pending cases. The legislature in 2011 expressed that certain juvenile-code amendments from 2001 apply "to all proceedings pending . . . on July 1, 2001" and other amendments from 2009 apply "to proceedings pending on or initiated on or after May 12, 2009." Ind. Code § 31-30-1-0.1. Here, in contrast, the legislature in 2023 expressed nothing of the sort regarding these disputed juvenile-code amendments. Pub. L. No. 115-2023, § 7, 2023 Ind. Acts 1216, 1224–25 (codified at I.C. § 31-30-1-4(d)). Thus, under my proposed rule, the 2023 jurisdictional fix applies only prospectively and not to this case. Simple as that.

\* \* \*

For these reasons, I concur only in part and in the court's judgment. I would abandon *N.G.*'s quixotic search for the legislature's "purpose" or "intent" or for "strong and compelling reasons" to apply a statute retroactively. Instead, I would rely on text alone and require an affirmative statement of retroactivity to overcome the judicial presumption that legislative silence means prospective-only application.

**Molter, J., concurring.**

The Court's well-reasoned opinion faithfully adheres to our precedents, so I join it in full. But there is also much to commend in Justice Slaughter's proposal for a clearer judicial presumption that legislation operates only prospectively unless the legislature explicitly directs us otherwise, and I remain open to adopting his proposed rule in a future case.

Massa, J., joins.