**DEKALB COUNTY EASTERN COMMUNITY SCHOOL DISTRICT, Petitioner,**

**v.**

**DEPARTMENT OF LOCAL GOVERNMENT FINANCE, Respondent.**

**No. 49T10–0906–TA–31.**

Tax Court of Indiana.

July 20, 2010.

Randal J. Kaltenmark, Ziaaddin Molla-bashy, Jeffery J. Qualkinbush, Larry J. Stroble, Barnes & Thornburg LLP, India-napolis, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Andrew J. Asma, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The DeKalb County Eastern Community School District (the District) appeals the Department of Local Government Finance's (DLGF) final determination reducing its capital projects fund levy tax rate for the 2009 budget year. DeKalb's appeal presents one issue for this Court's review: whether, in reducing that tax rate, the DLGF properly applied the formula contained in Indiana Code § 6–1.1–18–12.

## RELEVANT FACTS AND PROCEDURAL HISTORY

The District is a public school corporation located in DeKalb County, Indiana. On August 18, 2008, the District adopted its proposed budget for 2009. As part of its budget proposal, the District estimated the tax rate needed to finance its capital projects fund ("CPF"). (*See* Cert. Admin. R. at 222.) The District submitted its proposed budget to the DLGF for approval.

On May 7, 2009, the DLGF notified the District that it was, among other things, reducing the tax rate applicable to the District's CPF levy pursuant to the formula provided in Indiana Code § 6–1.1–18–12. (*See* Cert. Admin. R. at 226, 230.) The District protested the adjustment. On May 21, 2009, the DLGF issued a final determination denying the protest and certifying the final budget order.

DeKalb subsequently filed this original

tax appeal.[1] On April 9, 2010, the Court heard the parties' oral arguments. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

The facts in this case are not in dispute. The only dispute in this case is whether, in adjusting the District's CPF tax rate, the DLGF properly applied the statutory formula in Indiana Code § 6–1.1–18–12. Accordingly, this Court will employ a *de novo* standard of review. *See, e.g., Pike Twp. Educ. Found., Inc. v. Rubenstein*, 831 N.E.2d 1239, 1241 (Ind.Ct.App.2005) (stating when relevant facts are not in dispute and only the interpretation of a statute is at issue, such interpretation presents a pure question of law which is reviewed *de novo* ).

### Discussion

By statute, the tax rate applicable to any school corporation's CPF levy is capped at a maximum rate of $0.4167 per each $100 of assessed valuation within the taxing district. *See* Ind.Code Ann. § 20–46–6–5 (West 2008). That maximum rate, however, is subject to adjustment each year "to account for the change in assessed value of real property that results from [ ] an annual adjustment of the assessed value of real property under IC 6–1.1–4–4.5[ ] or [ ] a general reassessment of real property under IC 6–1.1–4–4." IND.CODE ANN. § 6–1.1–18–12(c) (West 2008). To make that adjustment, the legislature provided the following statutory formula:

STEP ONE: Determine the maximum rate for the political subdivision levying a property tax ... under the statute for the year preceding the year in which the annual adjustment or general reassessment takes effect.

STEP TWO: Determine the actual percentage increase (rounded to the nearest one-hundredth percent (0.01%)) in the assessed value (before the adjustment, if any, under IC 6–1.1–4–4.5) of the taxable property from the year preceding the year the annual adjustment or general reassessment takes effect to the year that the annual adjustment or general reassessment takes effect.

STEP THREE: Determine the three (3) calendar years that immediately precede the ensuing calendar year and in which a statewide general reassessment of real property does not first take effect.

STEP FOUR: Compute separately, for each of the calendar years determined in STEP THREE, the actual percentage increase (rounded to the nearest one-hundredth percent (0.01%)) in the assessed value (before the adjustment, if any, under IC 6–1.1–4–4.5) of the taxable property from the preceding year.

STEP FIVE: Divide the sum of the three (3) quotients computed in STEP FOUR by three (3).

STEP SIX: Determine the greater of the following:

(A) Zero (0).

(B) The result of the STEP TWO percentage minus the STEP FIVE percentage.

STEP SEVEN: Determine the quotient of the STEP ONE tax rate divided by the sum of one (1) plus the STEP SIX percentage increase.

*Id.* at (e).

■ The issue before the Court is how this formula is to be applied. The parties

---

1. While the case was pending, the DLGF issued a revised budget order in which it slightly increased the District's CPF tax rate. The reason for the increase is unrelated to the issue presently before the Court. (*See* Cert. Admin. R. at 946.) (*See also* Pet'r Br. at 6–7.)

agree that the issue's resolution is dependent on the answer to a more specific question: what does the phrase "actual percentage increase," as used in STEPS TWO and FOUR of the formula, mean? The parties' arguments are summarized as follows.

The District contends that the phrase means exactly what it says: actual increases *only*. Consequently, the District argues that if there is no increase in a district's assessed value from one year to the next, a zero value should be used in STEPS TWO and FOUR of the formula. (*See* Pet'r Br. at 13–14.) The DLGF, on the other hand, maintains that the use of a zero value in the formula "ignores reality." (*See* Resp't Br. at 9–11.) Indeed, as the DLGF explains,

> [w]hen [the District's] maximum CPF rate was calculated for 2009, there were two years accounted for in the formula in which the assessed value of property actually decreased. Consequently, the DLGF was faced with the unusual question: When the statute requires a rate adjustment to account for a *change* in assessed values, and the formula requires the DLGF to determine the "actual percentage increase" in assessed values, what is the appropriate way to reflect a change that is actually a *decrease* in assessed value? In other words, is a zero value any more appropriate than a negative value in that situation? Ultimately, the DLGF concluded that a zero value [wa]s inappropriate because it [wa]s an inaccurate reflection of the actual change in [the District's] assessed value.

(Resp't Br. at 7.)

■ When this Court is confronted with a question of statutory construction, its function is to determine and implement the intent of the legislature in enacting that statutory provision. *See Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue,* 568 N.E.2d 578, 580 (Ind. Tax Ct.1991), *aff'd by* 585 N.E.2d 1336 (Ind.1992). In general, the best evidence of the legislature's intent is found in the actual language used within the statute itself. *See id.* at 581. Additionally, the statute must be read as a whole, and not as individual sections or unrelated parts. *See State v. Adams,* 583 N.E.2d 799, 800 (Ind.Ct.App.1992) (stating that "[e]ach part [of a statute] must be considered with reference to all other parts" of the statute) (citation omitted), *trans. denied.* Finally, the statute must be read in such a way that prevents an illogical or absurd result. *See Uniden Am. Corp. v. Indiana Dep't of State Revenue,* 718 N.E.2d 821, 828 (Ind. Tax Ct.1999).

■ The DLGF's position in this case contravenes these very rules of statutory construction. First and foremost, the legislature intentionally used the phrase "actual percentage *increase*" in the statutory formula and not "actual percentage *decrease*" or even "actual percentage *of change.*" When the language of a statute is clear and unambiguous, the Court may not expand or contract the meaning of a statute by reading into it language to correct any supposed omissions or defects. *Kohl's Dep't Stores, Inc. v. Indiana Dep't of State Revenue,* 822 N.E.2d 297, 300 (Ind. Tax Ct.2005).

Second, while the DLGF is correct that annual trending or a general reassessment can cause a district's assessed valuation to "change" by either an increase or a decrease, *see* A.I.C. § 6–1.1–18–12(c), the legislature has chosen to limit or confine that "change" via Indiana Code § 6–1.1–18–12(e). In other words, the "change" referred to in Indiana Code § 6–1.1–18–12(c) is further defined in Indiana Code § 6–1.1–18–12(e) to mean "increase," and

not "decrease." *See SAC Fin., Inc. v. Indiana Dep't of State Revenue,* 894 N.E.2d 1116, 1120 (Ind. Tax Ct.2008) (explaining that when a statute contains both a specific provision and a general one, the specific provision will control) (citation omitted), *review denied.*

■ Finally, as both parties explain, the legislature wanted to ensure that taxing units like the District would not receive "windfalls" through their CPF levies when their assessed values increased as a result of "inflationary" growth (i.e., growth caused by trending or general reassessment), and not "real" growth (i.e., the addition of new, taxable property to the existing tax base). (*See* Pet'r Br. at 9–10, 17; Resp't Br. at 7.) Consequently, the statutory formula in Indiana Code § 6–1.1–18–12(e) is designed to "neutralize" that inflationary growth by decreasing the tax rate applicable to the CPF levy. (*See* Pet'r Br. at 9–10, 13; Resp't Br. at 7.) To say, as the DLGF does, however, that the CPF tax rate must also be decreased when a district experiences a loss in assessed value due to "deflation" is nonsensical.[2]

A taxing unit's capital needs fluctuate with "real" growth. For instance, when new residential properties are added to a school corporation's tax base, there are additional students to educate. In order to meet the demand of an increase in student population, school corporations often require additional facilities and upgraded (if not additional) technology network systems. *See, e.g.,* 50 Ind. Admin. Code 9–1–4 (2008) (*see* http://www.in.gov/legislative/iac/) (explaining a CPF's permitted expenses). But as the legislature acknowledged, a school corporation's capital needs will not fluctuate with inflationary growth (i.e., property prices increase, but student population does not). *See* A.I.C. § 6–1.1–18–12(e). The same is true with "deflationary growth" (i.e., property prices decrease, but student population does not).[3]

## CONCLUSION

Given the actual language used in Indiana Code § 6–1.1–18–12, the phrase "actual percentage increase" means increase *only.* If there is no increase, however, a zero value should be used in STEPS TWO and FOUR of Indiana Code § 6–1.1–18–12(e). (*See* Pet'r Br., App. at G.) The DLGF's final determination is therefore REVERSED. The matter is remanded to the DLGF to take action consistent with this opinion.[4]

2. "Deflation," the opposite of inflation, is defined as "a contraction in the volume of available money or credit resulting in a decline of the general price level[.]" Webster's Third New Int'l Dictionary (2002 ed.) at 592.

3. School corporations prepare and adopt three-year CPF plans annually. Consequently, if there is a "real" decrease in assessed valuation, school corporations are able to adjust their capital requirements accordingly.

4. As the District notes, the corrected 2009 CPF tax rate will be used in calculating both its 2010 CPF tax rate and its 2011 CPF tax rate. (*See* Pet'r Br. at 19 (explaining that Indiana Code § 6–1.1–18–12(e) is "cumulative" in its effect).) Nevertheless, the District requests that the relief it seeks commence with the 2011 budget order. (*See* Oral Argument Tr. at 18–19 (explaining that because the 2010 budget order, and related tax bills, have already been processed, it wishes to eliminate any additional burden on taxpayers for that tax year).) The DLGF is therefore instructed to provide the relief as requested by the District.