ATTORNEY FOR PETITIONER:
**BETH E. HENKEL**
LAW OFFICE OF BETH HENKEL, LLC
Indianapolis, IN

ATTORNEY FOR RESPONDENT:
**CHRISTOPHER D. OAKES**
COX, OAKES & ASSOCIATES, LTD.
Schaumburg, IL

# IN THE
# INDIANA TAX COURT

ELKHART COUNTY ASSESSOR,               )
                                       )
    Petitioner,                     )
                                       )
        v.                       )   Case No. 22T-TA-00007
                                       )
LEXINGTON SQUARE, LLC,                 )
                                       )
    Respondent.                     )

FILED

Sep 01 2023, 12:24 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## ON APPEAL FROM A FINAL DETERMINATION OF
## THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**September 1, 2023**

WENTWORTH, J.

In a final determination dated March 24, 2022, the Indiana Board of Tax Review determined that because neither the Elkhart County Assessor nor Lexington Square, LLC demonstrated what the correct assessment of Lexington Square's real property should have been for the 2016 through 2018 tax years, Indiana Code § 6-1.1-15-17.2 dictated that those assessments revert to the property's 2015 assessed value. The Assessor now appeals. Upon review, however, the Court affirms the Indiana Board's final determination.

## FACTS AND PROCEDURAL HISTORY

In September of 2016, Lexington Square purchased a multi-building apartment

complex in Elkhart, Indiana. (See, e.g., Cert. Admin. R. at 978.) While that property had been assessed at $3,490,500 for tax year 2015, the Assessor increased the property's assessment to $7,683,000 for tax year 2016, $7,028,200 for tax year 2017, and $7,059,800 for tax year 2018. (See Cert. Admin. R. at 978-96, 2349.) The increases in value were attributable, in part, to the Assessor's removal of an obsolescence adjustment that the property had formerly received. (See, e.g., Cert. Admin. R. at 2492-93, 2539-41, 2555-56.)

Alleging that the 2016 to 2018 assessments were not only incorrect, but also were unfair when compared to the assessments of other apartment complexes in Elkhart County, Lexington Square initiated appeals first with the Elkhart County Property Tax Board of Appeals ("PTABOA") and then with the Indiana Board. (See Cert. Admin. R. at 1-721.) The Indiana Board conducted a consolidated hearing on all of Lexington Square's appeals on May 18, 2021. (See Cert. Admin. R. at 2298-2563.)

During the Indiana Board hearing, the Assessor admitted that because she increased the subject property's assessment by more than 5% between 2015 and 2016, Indiana Code § 6-1.1-15-17.2 dictated that she bore the burden of proof on the valuation issue. (See Cert. Admin. R. at 2317-19, 2349-50.) The parties agreed, however, that the burden of proof on the uniformity issue resided with Lexington Square. (See Cert. Admin. R. at 2317-19.) Accord Thorsness v. Porter Cnty. Assessor, 3 N.E.3d 49, 52 (Ind. Tax Ct. 2014) (explaining that the burden-shifting rule in Indiana Code § 6-1.1-15-17.2 (and its predecessor statutes) applied only to valuation challenges, not to constitutional uniformity challenges).

To demonstrate that her assessment valuations were correct, the Assessor

2

submitted an appraisal, completed in conformance with the Uniform Standards of Professional Appraisal Practice, that valued the subject property between $7,277,349 and $7,990,000 during each of the years at issue. (See Cert. Admin. R. at 1758-1852, 2349-51, 2358.) In rebuttal, Kevin Donohoe, the vice president of Lexington Square's property management company, testified that he believed the subject property's assessed value should have been between $6,776,466 and $7,535,545 during each of the years at issue. (See, e.g., Cert. Admin. R. at 2480, 2487-88, 2495.) Donohoe explained that he arrived at those values by applying a capitalization rate to the average of the property's actual net operating income for tax years 2015 through 2017.[1] (See, e.g., Cert. Admin. R. at 997-1507, 2469-97, 2515-17, 2526.)

With respect to the uniformity issue, Lexington Square presented the Indiana Board with evidence that compared recent sales prices of numerous other apartment complexes in Elkhart County to their assessment values, asserting that it demonstrated that those properties were "underassessed" on average by more than 26%. (See, e.g., Cert. Admin. R. at 941-75, 997-1283, 1506-1632, 2458-69, 2480-85, 2489-96, 2519-20.) Lexington Square asserted that its property, in contrast, was underassessed by only 4%. (See, e.g., Cert. Admin. R. at 978-96, 2127-36, 2526 (comparing Lexington Square's $7,975,000 purchase price against its assessed value).)

The Indiana Board's final determination issued on March 24, 2022, was based on this Court's decision in Southlake Indiana, LLC v. Lake County Assessor (Southlake II), 181 N.E.3d 484, 489 (Ind. Tax Ct. 2021), review denied, finding that the Assessor did not

---

[1] Donohoe testified that based on sales data from what he believed were comparable apartment complexes in Elkhart County, he extracted a capitalization rate to apply to the subject property's averaged net operating income. (See, e.g., Cert. Admin. R. at 997-1507, 2478-83, 2487-97.)

prove her assessment was "correct" because her appraisal evidence did not conclude "exactly and precisely" to the actual assessed values she applied during the years at issue. (See Cert. Admin. R. at 2222-23 ¶¶ 46-47.) Likewise, the Indiana Board found that Lexington Square had failed to show what the proper value of its property should have been because "Don[o]hoe based his analysis solely on the subject property's historical income, expenses, and occupancy without comparing that data to the market." (Cert. Admin. R. at 2223-24 ¶ 49.) Finally, regarding the uniformity issue, the Indiana Board determined that Lexington Square failed to demonstrate that it was unfairly assessed in comparison to other similarly-situated properties, explaining that its evidence failed to comport with any of the standards for ratio studies as set forth by both the Indiana Department of Local Government Finance and the International Association of Assessing Officers. (See, e.g., Cert. Admin. R. at 2227-33 ¶¶ 59-74.) Accordingly, because neither party proved the property's correct assessed value, the Indiana Board ordered that each of Lexington Square's contested assessments revert to the property's 2015 assessed value in accordance with Indiana Code § 6-1.1-15-17.2. (Cert. Admin. R. at 2238 ¶ 91.)

The Assessor petitioned for a rehearing, claiming that the Indiana Board had erroneously applied the burden of proof. (See Cert. Admin. R. at 2243-53.) In support, the Assessor argued that Indiana Code § 6-1.1-15-17.2 no longer applied to the appeal because three days before the Indiana Board issued its final determination, the Legislature simultaneously repealed Indiana Code § 6-1.1-15-17.2 and adopted a new statute, Indiana Code § 6-1.1-15-20, in its stead. (See, e.g., Cert. Admin. R. at 2244.) The Assessor explained that because the new statute 1) specified that it applied only to appeals filed after its effective date of March 21, 2022, and 2) did not specify that the

4

provisions in Indiana Code § 6-1.1-15-17.2 still applied to pending appeals, "it was as if Indiana Code § 6-1.1-15-17.2 never existed." (See Cert. Admin. R. at 2243-53.) Thus, she concluded that she never bore the burden of proof at the Indiana Board's administrative hearing. (See Cert. Admin. R. at 2250-51.) The Indiana Board denied the Assessor's petition for rehearing. (See Cert. Admin. R. at 2296.)

The Assessor initiated this original tax appeal on May 5, 2022. The Court heard the parties' oral arguments on October 6, 2022. Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Thus, to prevail in her appeal, the Assessor must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2023).

## LAW

This Court has previously explained that prior to 2009, a taxpayer who challenged his property tax assessment always bore the burden of proof (i.e., the burden of persuading the fact-finder that the assessment was incorrect and the burden of producing evidence to demonstrate the correct assessment). Orange Cnty. Assessor v. Stout, 996

5

N.E.2d 871, 873 (Ind. Tax Ct. 2013) (citations omitted).  Beginning in 2009, however, the Legislature enacted a series of statutory exceptions that required the assessing official, not the taxpayer, to bear the burden of proof in certain circumstances.  See, e.g., IND. CODE § 6-1.1-15-1(p) (eff. July 1, 2009) (amended 2011); IND. CODE § 6-1.1-15-17 (2011) (repealed 2012); IND. CODE § 6-1.1-15-17.2 (2012) (repealed 2022).

The exception governing this appeal stated that if an assessing official increased a taxpayer's property assessment by more than 5% from one year to the next, the assessing official "making the assessment ha[d] the burden of proving that the assessment [was] correct in any review or appeal under this chapter and in any appeals taken to the Indiana board of tax review or to the Indiana tax court."  IND. CODE § 6-1.1-15-17.2(a)-(b) (2016) (repealed 2022).  Moreover, the event that triggered the authority of Indiana Code § 6-1.1-15-17.2 to shift the burden of proof to the assessing official was the filing of an appeal challenging the assessing official's assessment increase.  See I.C. § 6-1.1-15-17.2(a); Stout, 996 N.E.2d at 875 (explaining that the plain language of the burden-shifting statutes "indicate[s] that the burden of proof shifts from the taxpayer to an assessing official when a taxpayer files an appeal on an assessment that increased by more than 5% from one year to the next" (emphasis added)).

To demonstrate that her assessment was correct, Indiana Code § 6-1.1-15-17.2 requires the assessing official to present evidence that "exactly and precisely conclude[d] to her original assessment."  Southlake II, 181 N.E.3d at 489.  "If [the assessing official] fails to meet th[at] burden of proof[, however,] . . . the taxpayer may introduce evidence to prove the correct assessment."  I.C. § 6-1.1-15-17.2(b).  See also Southlake Indiana, LLC v. Lake Cnty. Assessor (Southlake I), 174 N.E.3d 177, 179-80 (Ind. 2021) (explaining

that neither the Indiana Board nor this Court can consider one party's evidence to support whether the opposing party met its burden of proof under Indiana Code § 6-1.1-15-17.2). If the assessing official did not meet her burden and the taxpayer chose not to introduce evidence or introduced evidence that did not prove what the correct assessment should be, "the [challenged] assessment [would] revert[] to the assessment for the prior tax year[.]" I.C. § 6-1.1-15-17.2(b). This provision of Indiana Code § 6-1.1-15-17.2 has been referred to as "the reversionary clause."[2] See, e.g., Southlake I, 174 N.E.3d 179.

On March 21, 2022, the Legislature simultaneously repealed Indiana Code § 6-1.1-15-17.2 and enacted a new statutory exception, Indiana Code § 6-1.1-15-20, in its stead. See Pub. L. No. 174-2022, §§ 32, 34 (eff. Mar. 21, 2022) (indicating that both actions were "effective upon passage"). Indiana Code § 6-1.1-15-20 states:

> (a) In an appeal under this chapter, except as provided in subsection (b), the assessment as last determined by an assessing official or the county board is presumed to be equal to the property's true tax value[3] until rebutted by evidence presented by the parties.
>
> (b) If a property's assessment increased more than five percent (5%) over the property's assessment for the prior tax year, then the assessment is no longer presumed to be equal to the property's true tax value, and the assessing official has the burden of proof.

*****

---

[2] The reversionary clause was not part of the original 2012 text of Indiana Code § 6-1.1-15-17.2; rather, it was added two years later, in 2014. See Pub. L. No. 97-2014, § 2 (eff. Mar. 25, 2014). At that time, the Legislature specified that the reversionary clause would apply "to all appeals or reviews pending on the effective date of the amendments made to this section in the 2014 regular session of the Indiana general assembly" and "to all appeals or reviews filed thereafter." P.L. 97-2014, § 2. In 2019, the Legislature removed the language that applied the reversionary clause to appeals that had been filed prior 2014. See Pub. L. No. 121-2019, § 13 (eff. July 1, 2019).

[3] Property in Indiana is assessed based on its true tax value; a property's true tax value is equivalent to its market value-in-use, and a property's market value-in-use is typically its market value. See, e.g., IND. CODE § 6-1.1-31-6(c) (2022); 2021 Real Property Assessment Manual (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2021)) at 2; Millennium Real Est. Inv., LLC v. Assessor, Benton Cnty., 979 N.E.2d 192, 196 (Ind. Tax Ct. 2012), review denied.

(e) Both parties in an appeal under this chapter may present evidence of the true tax value of the property, seeking to decrease or increase the assessment.

(f) In an appeal under this chapter, the Indiana board shall, as trier of fact, weigh the evidence and decide the true tax value of the property as compelled by the totality of the probative evidence before it. The Indiana board's determination of the property's true tax value may be higher or lower than the assessment or the value proposed by a party or witness. If the totality of the evidence presented to the Indiana board is insufficient to determine the property's true tax value in an appeal governed by subsection (a), then the property's assessment is presumed to be equal to the property's true tax value. If the totality of the evidence presented to the Indiana board is insufficient to determine the property's true tax value in an appeal governed by subsection (b), then the property's prior year assessment is presumed to be equal to the property's true tax value.

*****

(h) This section applies only to appeals filed after the effective date of this section as added by HEA 1260-2022.[4]

IND. CODE § 6-1.1-15-20 (2022) (footnotes and emphases added). See also P.L. 174-2022, § 34. Indiana Code § 6-1.1-15-20 preserves the requirement that an assessing official bears the burden of demonstrating that an assessment is correct if she increases it by 5% or more from one year to the next; eliminates the requirement that to meet that burden, the assessor's evidence must "exactly and precisely" conclude to the original assessment; allows the Indiana Board to determine the correct assessment based on evidence presented by both parties; and limits the reversionary clause remedy to instances when neither party presented sufficient evidence for the Indiana Board to

---

[4] Both the repeal of Indiana Code § 6-1.1-15-17.2 and the enactment of Indiana Code § 6-1.1-15-20 were presented to the Governor as part of House Enrolled Act 1260; they became public law when HEA 1260 was signed by the Governor on March 21, 2022. See, e.g., https://iga.in.gov/legislative/2022/bills/house/1260/actions (last visited August 30, 2023).

determine a property's correct assessment.  Compare I.C. § 6-1.1-15-20(b), (e)-(f) with I.C. § 6-1.1-15-17.2 and Southlake II, 181 N.E.3d at 489.

## ANALYSIS

In its final determination, the Indiana Board concluded that under Indiana Code § 6-1.1-15-17.2, the Assessor bore, but failed to meet, her burden of proving that her 2016 to 2018 assessments of Lexington Square's property were correct.  (See Cert. Admin. R. at 2222-23 ¶¶ 46-47.)  The Indiana Board also found that Lexington Square failed to demonstrate what the correct assessment should be.  (See Cert. Admin. R. at 2238 ¶ 91.)  As a result, the Indiana Board applied the reversionary clause and ordered Lexington Square's 2016 to 2018 assessments to revert to the property's 2015 assessed value of $3,490,500.  (See Cert. Admin. R. at 2238 ¶ 91.)

On appeal, the Assessor argues that the Indiana Board got it all wrong.  She asserts that Indiana Code § 6-1.1-15-17.2 no longer applied to this case once the statute was repealed on March 21, 2022, three days before the Indiana Board issued its final determination.  (See, e.g., Br. Pet'r Elkhart Cnty. Assessor ("Pet'r Br.") at 2, 9-16.)  She further explains that the newly enacted statute, Indiana Code § 6-1.1-15-20, specified that it applied only to cases filed after March 21, 2022, and it did not have a savings clause[5] that authorized Indiana Code § 6-1.1-15-17.2 to remain in effect for appeals that were still pending.  (See, e.g., Pet'r Br. at 2, 9-16.)   As a result, the Assessor contends that:  1) the repeal of Indiana Code § 6-1.1-15-17.2 "eliminated that law as though it never existed"; 2) "no burden-shifting statut[ory provision] . . . applies to any . . . appeals pending

---

[5] A savings clause is defined as "[a] statutory provision exempting from coverage something that would otherwise be included."  BLACK'S LAW DICTIONARY 1610 (11th ed. 2019).  It "is generally used in a repealing act to preserve rights and claims that would otherwise be lost."  Id.

9

at the Indiana Board or [any county property tax assessment board of appeals] as of March 21, 2022"; and 3) Lexington Square's appeals should be remanded to the Indiana Board to determine the correct assessment "based on the general rule that [Lexington Square as the t]axpayer bears the burden of proof[.]"[6]  (See Pet'r Br. at 13 (emphasis omitted), 20, 22.)

In support of her position, the Assessor simply listed several Indiana cases stating that "'in the absence of a legislative enactment to the contrary, the repeal of a statute without a saving[s] clause, where no vested right[7] is impaired, completely obliterates it, and renders the same as ineffective as if it had never existed.'"  (See Pet'r Br. at 13-15 (quoting Parr v. Paynter, 137 N.E. 70, 71 (Ind. Ct. App. 1922) (footnote added); citing Dep't Pub. Welfare of Allen Cnty. v. Potthoff, 44 N.E.2d 494, 497 (Ind. 1942); Heath v. Fennig, 40 N.E.2d 329, 331 (Ind. 1942); Taylor v. Strayer, 78 N.E. 236, 237-38 (Ind. 1906); Rupert v. Martz, 18 N.E. 381, 383 (Ind. 1888); Henderson v. State, 58 Ind. 244, 247 (Ind. 1877); Bd. Comm'rs of St. Joseph Cnty. v. Ruckman, 57 Ind. 96, 101-02 (Ind. 1877); Moor v. Seaton, 31 Ind. 11, 13 (Ind. 1869)).)  (See also Reply Br. Pet'r Elkhart Cnty. Assessor ("Pet'r Reply Br.") at 3-4.)  The Assessor's "analysis" fails to recognize, however, the line of Indiana cases that explain an express savings clause is not required

---

[6] On remand, the Assessor continues, "the Indiana Board should, at a minimum, uphold the Assessor's assessments, given that the Indiana Board already determined that [Lexington Square] failed to submit probative evidence demonstrating that [its] assessments for 2016, 2017[,] and 2018 were incorrect and what the assessments should be[.]"  (Br. Pet'r Elkhart Cnty. Assessor ("Pet'r Br.") at 22.)

[7] A "vested right" is "[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." BLACK'S LAW DICTIONARY at 1585. See also WEBSTER'S THIRD NEW INT'L DICTIONARY 2547 (2002 ed.) (stating that a "vested right" is "a right belonging so absolutely, completely, and unconditionally to a person that it cannot be defeated by the act of any private person and that is entitled to governmental protection usu. under a constitutional guarantee").

10

to prevent the destruction of rights existing under a repealed statute if the Legislature's intention to preserve and continue those rights is otherwise clearly apparent. See, e.g., State ex rel. Milligan v. Ritter's Est., 48 N.E.2d 993, 999 (Ind. 1943); Indianapolis Union R. Co. v. Waddington, 82 N.E. 1030, 1032 (Ind. 1907); Gorley v. Sewell, 77 Ind. 316, 318-21 (Ind. 1881); Hibler v. Globe Am. Corp., 147 N.E.2d 19, 26-27 (Ind. Ct. App. 1958). The Court must therefore determine whether it is clearly apparent – despite the lack of an express savings clause – that the Legislature did not intend to rescind the rights of taxpayers like Lexington Square whose appeals were filed under Indiana Code § 6-1.1-15-17.2 and still pending when that statute was repealed on March 21, 2022.

The best evidence of legislative intent is found in the actual statutory language at issue. See Johnson Cnty. Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue, 568 N.E.2d 578, 580-81 (Ind. Tax Ct.1991), aff'd by 585 N.E.2d 1336 (Ind. 1992). Moreover, that statutory language must be construed in accordance with the entire context of the act in which it is a part and also in harmony with any other statutes that apply to the same subject matter. Id. at 584. This guidance is likewise relevant to determining how the repeal of a statute is to be applied. See, e.g., Ritter's Est., 48 N.E.2d at 999 (explaining that rules of construction also apply to construing acts that repeal statutes).

As earlier indicated, Lexington Square filed its appeal while Indiana Code § 6-1.1-15-17.2 was in effect; therefore, upon filing the case, that statute shifted the burden of proof to the assessing official for the pendency of the entire case. Supra pp. 2, 6. The same day that Indiana Code § 6-1.1-15-17.2 was repealed, the Legislature simultaneously enacted Indiana Code § 6-1.1-15-20, which was "effective upon passage."

11

See P.L. 174-2022, § 34. The plain language of Indiana Code § 6-1.1-15-20 explicitly stated it would only apply to appeals filed after March 21, 2022. See P.L. 174-2022, § 34; I.C. § 6-1.1-15-20(h). Reading all of these provisions in light of each other, it is clearly apparent that the Legislature simply intended that Indiana Code § 6-1.1-15-17.2 would not apply to appeals filed after its repeal date of March 21, 2022. Stated differently, when the Legislature repealed Indiana Code § 6-1.1-15-17.2, the right to proceed under that statute was terminated only for all future cases, i.e., cases filed after its March 21, 2022, repeal. Moreover, the statute's provisions continued to apply to appeals, like this one, that had been filed before the repeal of Indiana Code § 6-1.1-15-17.2 and were still pending. Furthermore, this conclusion – that the simultaneous repeal and enactment of these two statutes are independently effective – is reinforced by the general presumption that legislation operates prospectively and therefore must be read in such a way that prevents an illogical or absurd result. See, e.g., DeKalb Cnty. E. Cmty. Sch. Dist. v. Dep't of Local Gov't Fin., 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010); Uniden Am. Corp. v. Indiana Dep't of State Revenue, 718 N.E.2d 821, 828 (Ind. Tax Ct. 1999). See also N.G. v. State, 148 N.E.3d 971, 976 (Ind. 2020) (Slaughter, J. dissenting) (stating that "[g]iven our presumption that legislation applies prospectively, the phrase 'effective upon passage' is presumed to mean 'has prospective effect upon passage'"). As a result, the Assessor is not entitled to relief on the basis that Indiana Code § 6-1.1-15-20 does not contain an express savings clause.

The Assessor has also alleged that the repeal of Indiana Code § 6-1.1-15-17.2 was remedial because it promptly "cured" defects in the law – the statute's use of a "correctness" standard and a reversionary clause – along with their "absurd"

12

repercussions brought to light via the Southlake I and Southlake II decisions. (See Pet'r Br. at 16-18; Pet'r Reply Br. at 2, 4-9.) The general rule in Indiana is that legislation is to be given only prospective effect but "[a]n exception to this general rule exists for remedial statutes[.]" Martin v. State, 774 N.E.2d 43, 44 (Ind. 2002) (citations omitted). See also Bourbon Mini-Mart, Inc. v. Gast Fuel & Servs., Inc., 783 N.E.2d 253, 260 (Ind. 2003) (explaining that a remedial statute is one that is intended to cure a defect or mischief that existed in a prior statute). Relying on that exception, the Assessor contends that the repeal of Indiana Code § 6-1.1-15-17.2 should apply retroactively to all appeals still pending as of March 21, 2022. (See Pet'r Reply Br. at 4-5.)

The repeal of Indiana Code § 6-1.1-15-17.2 was not, however, remedial. Indiana Code § 6-1.1-15-17.2 explicitly provided that: 1) an assessing official bore the burden of proof in those cases where she increased an assessment by more than 5%, and 2) if the assessing official did not meet the burden of proving her assessment was correct, the taxpayer could either a) introduce evidence to prove the correct assessment, or b) simply let the assessment revert to the previous level. See I.C. § 6-1.1-15-17.2(a)-(b). Therefore, the Assessor's argument assumes the "defect" the Legislature sought to remedy by the repeal of Indiana Code § 6-1.1-15-17.2 was the Legislature's own explicit intent, expressed in the plain language of that statute itself. The Legislature's repeal of a statute, like the repeal of Indiana Code § 6-1.1-15-17.2, is not a sufficient reason to consider that the statute was "defective" and its repeal "remedial." Instead, it indicates the Legislature has simply reversed course on an otherwise expressly-stated policy.

Even if the repeal of Indiana Code § 6-1.1-15-17.2 were remedial, however, this retroactivity argument still fails. Indeed, there is no requirement that remedial legislation

13

<u>must</u> be applied retroactively; retroactive application is still the exception.  <u>State v. Pelley</u>, 828 N.E.2d 915, 919-20 (Ind. 2005) (explaining that while statutes addressing remedial matters may be applied retroactively, "such application is not required") (citation and emphasis omitted); <u>Hurst v. State</u>, 890 N.E.2d 88, 94 (Ind. Ct. App. 2008), <u>trans. denied</u>. Accordingly, the Court must have "strong and compelling reasons" before it applies remedial legislation retroactively.  <u>See</u> <u>Pelley</u>, 828 N.E.2d at 920 (citation omitted).

As her strong and compelling reasons, the Assessor argues that the application of Indiana Code § 6-1.1-15-17.2's reversionary clause "undermines and displaces" Indiana's market value-in-use and true tax value standards, fails to connect a value with the assessment date at issue, and "inevitably" leads to unjust and inequitable results.  (<u>See</u> Pet'r Br. at 16-18; Pet'r Reply Br. at 2, 4-9.)  The elimination of the reversionary clause, she continues, would rectify these issues and therefore augurs for applying the repeal of Indiana Code § 6-1.1-15-17.2 retroactively.  (<u>See</u> Pet'r Br. at 16-18; Pet'r Reply Br. at 2, 4-9.)  The Court is not persuaded that the Assessor's position is credible in light of the Legislature's lack of explicit language with respect to its repeal of Indiana Code § 6-1.1-15-17.2 or enactment of Indiana Code § 6-1.1-15-20 indicating an "unequivocal and unambiguous" retrospective intent.  <u>See</u> P.L. 174-2022, §§ 32, 34.  Consequently, the Court does not find that the Assessor has provided strong or compelling reasons to ignore the general rule and apply the repeal of Indiana Code § 6-1.1-15-17.2 retroactively.

Finally, courts must avoid interpreting statutory language in a manner that would lead to an absurd result or a result that the Legislature, as a reasonable body, could not have intended.  <u>See</u> <u>DeKalb Cnty. E. Cmty. Sch. Dist.</u>, 930 N.E.2d at 1260; <u>Dalton Foundries, Inc. v. State Bd. of Tax Comm'rs</u>, 653 N.E.2d 548, 553-54 (Ind. Tax Ct.1995).

14

By the plain language of Indiana Code § 6-1.1-15-17.2, any assessment appeal filed before March 21, 2022, that was still pending thereafter, would have informed the litigants that the assessing official bore the burden of proof. Therefore, the litigants would have prepared their litigation strategies accordingly. For example, a taxpayer might assume that the assessing official could not provide evidence that the original assessment was "exactly and precisely" correct, and therefore decide not to present any evidence but rather rely on the reversionary clause to allow the assessment to revert to the previous year's value. If the Court were to declare the repeal of Indiana Code § 6-1.1-15-17.2 had retroactive effect, however, "the rules of play" would be unfairly changed mid-stream. A re-do in every single one of the still-pending cases would be necessary to provide taxpayers an opportunity to develop and implement new litigation strategies aligned with the new allocation of the burden of proof. Reworking all pending appeals is absurd because the amount of time needed to resolve them would be significantly prolonged, an undue strain would be placed on administrative level resources, and costs of litigation would greatly increase. This is surely not the result the Legislature, as a reasonable body, would have intended. Accordingly, the Court declines the Assessor's invitation to apply the repeal of Indiana Code § 6-1.1-15-17.2 retroactively.

## CONCLUSION

The Indiana Board did not err when it determined that the provisions of Indiana Code § 6-1.1-15-17.2 applied to Lexington Square's assessment appeals. Consequently,

15

the Court AFFIRMS the Indiana Board's final determination.[8]

---

[8] The Court notes that in her reply brief, the Assessor introduced a new theory for recovery, asserting that even under Indiana Code § 6-1.1-15-17.2, the Indiana Board erred in applying that statute to Lexington Square's 2017 and 2018 appeals. (Compare Pet'r Reply Br. at 9-13 with Pet'r Pet. Jud. Rev. Final Determination Indiana Bd. Tax Rev. ("Pet'r Pet.") and Pet'r Br.) Despite the opportunity, the Assessor did not present this issue to the Indiana Board. (See Pet'r Pet., Attach. B.) Because the issue was not considered at the administrative level, it will not be considered here. See, e.g., Hoogenboom-Nofziger v. State Bd. of Tax Comm'rs, 715 N.E.2d 1018, 1021-22 (Ind. Tax Ct. 1999); Whitley Prods., Inc. v. State Bd. of Tax Comm'rs, 704 N.E.2d 1113, 1119 (Ind. Tax Ct. 1998), review denied; State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc., 420 N.E.2d 1324, 1328 (Ind. Ct. App. 1981); IND. CODE § 33-26-6-3 (2023) (indicating that in cases such as this, the Court is precluded from considering issues and evidence not presented to the Indiana Board).