ATTORNEYS FOR APPELLANT
Steve Carter
Attorney General of Indiana

Jodi Kathryn Stein
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
George E. Horn, Jr.
Jesse M. Barrett
Barnes & Thornburg
South Bend, Indiana

In the

# Indiana Supreme Court

No. 71S03-0403-CR-134

STATE OF INDIANA,

*Appellant (Plaintiff below),*

v.

ROBERT JEFFREY PELLEY,

*Appellee (Defendant below).*

Interlocutory Appeal from the St. Joseph Superior Court, No. 71D08-0208-MR-00016
The Honorable R.W. Chamblee, Jr., Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 71A03-0305-CR-163

**June 14, 2005**

**Rucker, Justice.**

Because of a statutorily created privilege, communication to a social worker from the social worker's client is protected from disclosure. But the privilege does not extend to communication taking place before the statute was enacted.

**Facts and Procedural History**

In 2002, Robert Jeffrey Pelley ("Pelley") was charged with the April 29, 1989 slayings of his father—Reverend Robert Pelley, stepmother—Dawn Pelley, and two minor stepsisters—Janel Pelley and Jolene Pelley. From May 27, 1986 until April 27, 1989, two days before the murders, Pelley, his father, and his stepmother received group and individual counseling from the Family and Children's Center ("Center") located in South Bend. During the course of the counseling sessions, Center compiled and maintained various records. They included: intake records for Robert Pelley, Reverend Pelley and Dawn Pelley; progress notes from meetings with Robert Pelley, Reverend Pelley and Dawn Pelley; a psychological evaluation of Robert Pelley; and billing and payment records. The record is silent as to who compiled the intake, billing and payment records. However, Mabel Davis, a social worker then employed by Center, authored the progress notes. The psychological evaluation bears the signature of Jackson Turner, whose status is not revealed by the record, and Dr. A. Joseph Schwab, a psychologist.

On August 22, 2002, the State served a *subpoena duces tecum* on Center requesting "[a]ny and all counseling records from the . . . Pelley family from 1986 – 1989." Appellant's App. at 30(a). Center responded with a motion to quash. At a hearing on the motion Center argued that the records authored by Mabel Davis were protected by the counselor/client privilege as codified in Indiana Code § 25-23.6-6-1; the psychological evaluation performed by Dr. Schwab was protected by the psychologist/patient privilege as codified in Indiana Code § 25-33-1-17; and none of the records fell within the "homicide exception" codified in both I.C. § 25-23.6-6-1 and I.C. § 25-33-1-17. Following the hearing, and after conducting an *in camera* inspection of the documents, the trial court granted Center's motion and quashed the subpoena.

The State pursued an interlocutory appeal arguing: (i) the statute creating the counselor/client privilege did not exist when the records were created and thus the statute does not extend to communications made to Mabel Davis by members of the Pelley family; (ii) the statute is not retroactive; and (iii) the requested documents may have come within the "homicide exception" to both the counselor/client and the psychologist/patient privileges. On this latter point, the State also complained that the trial court reviewed the documents *in camera* without

affording the State the opportunity to review the documents for the purpose of determining whether the homicide exception was applicable.

Affirming the trial court, a divided panel of the Court of Appeals determined that: (1) although the statute conveying the counselor/client privilege did not exist at the time of the counseling sessions, the date of disclosure is the determinative date for discovery requests regarding privileges; (2) notwithstanding the foregoing determination, the statute applies retroactively; and (3) the trial court did not abuse its discretion in reviewing the requested documents *in camera*. State v. Pelley, 800 N.E.2d 630 (Ind. Ct. App. 2003). Having previously granted transfer, we now affirm in part and reverse in part the judgment of the trial court.

**Discussion**

**I.** *The Relevant Date: the Date of Communication or the Date of Disclosure.*

Indiana Code section 25-23.6-6-1 provides in pertinent part:

> Matters communicated to a counselor[1] in the counselor's official capacity by a client are privileged information and may not be disclosed by the counselor to any person, except under the following circumstances:
>
> (1)  In a criminal proceeding involving a homicide if the disclosure relates directly to the fact or immediate circumstances of the homicide.

This statute was enacted effective July 1, 1990. Center contends that because I.C. § 25-23.6-6-1 prohibits a counselor from disclosing communications, the critical time for determining the applicability of the statute is when the communications are sought to be disclosed, not when the communications are originally made. According to Center, because the communications made

---

[1] Although referred to in the record as a "social worker," Tr. at 23, Mabel Davis identified herself in the contested documents as a "counselor." The discrepancy is of no consequence here for at least two reasons: (1) "social worker" is included in the definition of "counselor," see I.C.§ 25-23.6-1-3.8, and (2) the trial court specifically found that Mabel Davis "was a social worker within the meaning of I.C. 25-23.6.6-1," Appellant's App. at 308-09, a finding that neither party challenges on appeal.

3

by Pelley and members of his family were sought to be disclosed well after the statute was enacted, the trial court correctly quashed the subpoena.

When construing a statute our main objective is to determine, give effect to, and implement the intent of the legislature. Melrose v. Capitol City Motor Lodge, Inc., 705 N.E.2d 985, 989 (Ind. 1998). This jurisdiction generally recognizes that privileges are statutory in nature and that it is within the power of the legislature to create them. Terre Haute Reg'l Hosp., Inc. v Trueblood, 600 N.E.2d. 1358, 1360 (Ind. 1992). Most privileges were unknown at common law and, as a result, are to be strictly construed to limit their application. Id.

In Matter of C.P., 563 N.E.2d 1275 (Ind. 1990), this Court interpreted the then current version of the statutorily created physician/patient privilege.[2] Noting that such a privilege did not exist at common law and therefore the statute was to be strictly construed, we determined among other things, "The privilege is intended to inspire *full and complete communication* by patients so as to further trustful and successful treatment. [T]his Court has long recognized that the privilege covers both physicians and those who aid physicians, other persons whose intervention is strictly necessary to enable the parties to *communicate* with each other." Id. at 1278 (emphasis added) (citation omitted); see also Ley v. Blose, 698 N.E.2d 381, 383-84 (Ind. Ct. App. 1998) ("By safeguarding the *confidentiality of communications*, the physician-patient privilege seeks to inspire full and complete disclosure of knowledge pertinent and necessary to a trustful and proper relationship.") (emphasis added) (internal quotation omitted). In essence we have determined that the underlying purpose of the physician/patient privilege is to inspire full and complete communication. If that purpose is to be served, then the participants in a confidential conversation must be able to predict with some degree of certainty that the particular communications will be protected.

By enacting I.C. § 25-23.6-6-1 the Legislature extended to counselors the same privilege that exists for physicians. The intent and dominant purpose of the statute is to grant a privilege

---

[2] The statute read in relevant part, "Except as otherwise provided by statute, the following persons shall not be competent witness: . . . (3) [p]hysicians, as to matters communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases." I.C. § 34-1-14-5(3) (recodified as I.C. § 34-46-3-1 without substantial change).

4

to protect confidential communication between a counselor and the counselor's client. It is of course true the counselor/client privilege speaks in terms of "disclosure" while the physician/patient privilege does not. Still, the focus of both privileges is the same, namely, protecting communication. Consequently, because the focus of the statute is on the underlying communications and not, as Center contends, on the ultimate disclosure of the communications, the statute only protects communications made after the effective date. To exclude communications made prior to this date would be, in effect, to apply the statute retroactively. That brings us to our next point.

## II. The Retroactivity of Indiana Code section 25-23.6-6-1

The general rule of statutory construction is that unless there are strong and compelling reasons, statutes will not be applied retroactively. Martin v. State, 774 N.E.2d 43, 44 (Ind. 2002). Statutes are to be given prospective effect only, unless the legislature unequivocally and unambiguously intended retrospective effect as well. Bd. of Dental Examiners v. Judd, 554 N.E.2d 829, 832 (Ind. Ct. App. 1990). There is an exception to this general rule for remedial statutes, that is, statutes intended to cure a defect or mischief that existed in a prior statute. Bourbon Mini-Mart, Inc. v. Gast Fuel & Servs., Inc., 783 N.E.2d 253, 260 (Ind. 2003) (citing Martin, 774 N.E.2d at 44). Relying on our statement in Bourbon and Martin that "remedial statutes *will be applied* retroactively to carry out their legislative purpose unless to do so violates a vested or constitutional guaranty," (emphasis added), Center argues that I.C.§ 25-23.6-6-1 was enacted to cure a defect in the physician/patient privilege statute and thus it is remedial and applies retroactively to bar disclosure of communications between Center's counselor and the Pelley family.

We first observe that it is not at all clear to us that the counselor/client privilege statute is remedial. It is true the statute was enacted following the Court of Appeals' decision in Matter of C.P., 543 N.E.2d 410 (Ind. Ct. App. 1989), aff'd in part, 563 N.E.2d 1275 (Ind. 1990), which held that the physician/patient privilege did not protect communications between a counselor and a client. However, it is equally true, as the State points out, that the statute was enacted as part of a much broader scheme to regulate social workers as professionals. Public Law 186-

5

1990 created Article 23.6, "Marriage and Family Therapists." This article created a credentialing board for social workers and marriage family therapists, and addressed certification, examinations, unlawful practices, privileged communications, and mandatory disclosures. See I.C. § 25-23.6. It is reasonably plausible that by creating Article 23.6 under Title 25, the Legislature intended to recognize social workers as mental health professionals who were afforded state recognition and subject to state regulation, much the same as psychologists under Title 25, Article 33. We have no legislative history to inform us either way.

In any event, even assuming the counselor/client privilege statute is remedial, Center's retroactivity argument still fails. Despite language in Bourbon and Martin suggesting otherwise, not all remedial statutes are automatically applied retroactively. It has long been the law in this jurisdiction that although statutes and rules concerning procedural and remedial matters *may* be made to operate retroactively, it is not the case that they *must* apply retroactively. State ex rel. Uzelac v. Lake Crim. Ct., 247 Ind. 87, 212 N.E.2d 21, 24 (1965). As we held in Gosnell v. Indiana Soft Water Service, Inc.:

> Unless there are strong and compelling reasons, statutes will normally be given prospective application. While statutes addressing merely procedural and remedial matters may be applied retroactively, *such application is not required*.
>
> *        *        *
>
> Even under [the] argument that the statute is merely procedural or remedial, retroactive application is the exception, and such laws are normally to be applied prospectively absent strong and compelling reasons.

503 N.E.2d 879, 880 (Ind. 1987) (emphasis added) (citations omitted).

Like the physician/patient privilege, the statutorily created counselor/client privilege is also in derogation of common law. So it too must be strictly construed. Trueblood, 600 N.E.2d at 1360. For this reason, and because laws creating privileges "prohibit the ascertainment of

truth in many controversies," courts do not extend the scope of the privilege by implication. Matter of C.P., 563 N.E.2d at 1277 (discussing the physician/patient privilege). This approach is consistent with the U.S. Supreme Court's rule that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." Id. (citing United States v. Nixon, 418 U.S. 683, 710 (1974)). In this case, even assuming I.C. § 25-23.6-6-1 is remedial or procedural, the Legislature did not expressly make the statute retroactive. And we decline to construe the privilege contained in the statute as applying retroactively. Rather, absent clear legislative intent to the contrary we apply here the general rule favoring prospective application. In sum, the counselor/client privilege is not applicable in the case before us. Accordingly the trial court erred in quashing the State's subpoena requesting documents revealing communications between Center's counselor and the Pelley family. On this issue we reverse the judgment of the trial court.

### III. *The Homicide Exception*

Both the counselor/client privilege and the psychologist/patient privilege contain exceptions to the non-disclosure of confidential communication. At issue here are what are commonly referred to as the "homicide exceptions." For the counselor/client privilege the exception applies, "[i]n a criminal proceeding involving a homicide if the disclosure relates directly to the fact or immediate circumstances of the homicide." I.C. § 25-23.6-6-1(1). Worded only slightly differently the exception for the psychologist/patient privilege applies in "[t]rials for homicide when the disclosure relates directly to the fact or immediate circumstances of said homicide." I.C. § 25-33-1-17(1). After conducting an *in camera* inspection of the contested documents, the trial court determined that the homicide exceptions did not apply. The State contends that the trial court abused its discretion in making this determination. Although not necessarily raising the issue as error, the State makes a related claim that it "has not been able to review the documents, even for the limited purpose of arguing whether the documents fall within an exception to the privilege." Appellant's Pet. to Trans. at 11.

We first observe that we have already determined that the counselor/client privilege is not applicable in this case. Thus, our focus here is on the psychologist/patient privilege, which pre-

7

dated the time the Pelley family received counseling. Unless the homicide exception applies, any communication between Center's psychologist and the Pelley family is privileged and not discoverable. As for the State's claim that it has not been afforded the opportunity to review the privileged documents to determine if they contain non-privileged information, we conclude the State is not entitled to review the documents. And this is so because the very nature of the psychologist/patient privilege precludes the State from gaining access to confidential communications absent an exception. Rather, a determination must be made in the first instance as to whether the State has a right of access to the documents. Allowing the State itself to review the documents in order to make that determination would eviscerate the reason the privilege exists in the first place, namely: to protect confidential communications between psychologists and patients.

In essence we entrust trial courts rather than sparring litigants with the authority to preserve the inviolability of privileged information. And although the trial court may have allowed the State to review the requested documents in this case under a confidential protective order, it was not compelled to do so. See Van Meter v. Zimmer, 697 N.E.2d 1281, 1284-85 (Ind. Ct. App. 1998) (observing that the trial court could either conduct an *in camera* inspection of a joint tax return or allow discovery by the opposing party under a confidential protective order). Further, the notion of a trial court conducting an *in camera* inspection of documents to determine whether information contained in them is or is not discoverable is not particularly remarkable. For example in Owen v. Owen, 563 N.E.2d 605 (Ind. 1990), we addressed the physician/patient privilege declaring:

> [I]n those rare cases where the physician-patient privilege is properly invoked, it is incumbent on the party seeking to assert the privilege to identify to the court specifically which documents are believed to remain within the privilege, after which the *court will review the contested documents in camera* to ascertain their entitlement to the protection of the privilege.

Id. at 608 (emphasis added); see also Hulett v. State, 552 N.E.2d 47, 49 (Ind. Ct. App. 1990), trans. denied, (ruling the trial court erred in failing to conduct an *in camera* inspection of a counselor's file, because "[w]ithout such inspection, it was not possible for the trial court to

exercise its discretion in ruling upon the presence of discoverable evidence as opposed to irrelevant or immaterial matter."); Sturgill v. State, 497 N.E.2d 1070, 1073 (Ind. Ct. App. 1986) (ruling the trial court erred in denying defendant's pre-trial discovery request. "At the very least, the trial court should have conducted an *in camera* inspection of [the victim's] statements given to the welfare department . . . to determine whether any of the statements benefited [Defendant's] defense."). In sum, the State has not shown any entitlement to review the contested documents, and the trial court did not abuse its discretion by conducting the *in camera* inspection.

Concerning the State's claim that the trial court abused its discretion in determining that the contested documents did not fall within the homicide exception, the case of Jorgensen v. State, 574 N.E.2d 915 (Ind. 1991) is instructive. In Jorgensen, after a trial by jury the defendant was convicted of murder and conspiracy to commit murder. The conviction was affirmed on appeal and the defendant sought transfer raising a number of issues. We remanded the cause to the trial court for further proceedings after finding one issue dispositive: whether the trial court erred in denying the defendant an opportunity to depose two people.

The essential facts were these. While married to the murder victim, the defendant was involved in a relationship with Gary Cochran. There was testimony at trial that Cochran told a friend that he wanted to kill the victim. Cochran had also supplied written confessions admitting to having committed the murder. Defendant claimed that William Ball, a social worker, and Dr. Robert Greenburg, a psychologist, counseled Cochran. Claiming these two people had information that might tend to show that Cochran rather than the defendant committed the murder, the defendant moved to take their depositions. The trial court denied the request apparently on the grounds that the information possessed by both Ball and Dr. Greenburg was privileged or that the defendant had not shown that the information requested was material to her defense. Addressing the homicide exception to the psychologist/patient privilege, we noted the privilege did not protect the communications made to the social worker,[3] and that to the extent the defendant was seeking information relating to the facts or immediate circumstances of the homicide, the psychologist/patient privilege may not exist. Id. at 917.

---

[3] At the time of the defendant's trial the counselor/client privilege did not exist.

We went on to explain that with respect to non-privileged information, there are two principal questions a trial court must consider when ruling on discovery matters in a criminal trial: (1) is there a sufficient designation of the items to be discovered; and (2) are the items sought material to the defense? Id. Noting that the answer to the first question was affirmative, we then said:

> However, we cannot determine whether the information sought is material to her defense because we do not know what information Ball or Dr. Greenburg have relative to the homicide. The "catch-22" is that there is no method of determining what information they may hold unless *some discovery* is conducted.
>
> *          *          *
>
> Although the trial court has wide discretion in discovery matters, we conclude that the court should have allowed *some discovery* in order to make possible the determination of whether Ball and Dr. Greenburg possessed information which would have been material to Jorgensen's defense. It was error for the trial court to have concluded that whatever information they possessed was privileged without a factual basis for arriving at such a conclusion. Similarly, it was error to have denied discovery because of no showing of materiality where the only method for Jorgensen to have met the materiality requirement was to have the information made available to her.

Id. (emphasis added).

Among other things Jorgensen stands for the proposition that "some discovery" is permissible in order to make the determination whether a witness may have information not subject to a privilege. Here, the State makes no claim that it has sought discovery in this case and that its efforts to do so have been thwarted. Indeed the State readily admits that it has interviewed several witnesses, which has given the State reason to believe that the documents it requests "should include information concerning the facts and immediate circumstances of the murders." Appellant's Pet. to Trans. at 12. But the State does not elaborate further to explain what information the State obtained from these witnesses that formed the basis for its belief. In fact, had the State presented such evidence to the trial court then there may have been evidence of record before this Court to evaluate the State's contention that the trial court abused its

10

discretion in determining that the homicide exception did not apply.  However, on this record there is simply nothing before us to support the State's claim.  A trial court is accorded broad discretion in ruling on issues of discovery.  <u>Vernon v. Kroger Co.</u>, 712 N.E.2d 976, 982 (Ind. 1999).  On review, we presume that the trial court's decision is correct, and the party challenging the decision has the burden of persuading us that the trial court abused its discretion.  <u>Sears Roebuck & Co. v. Manuilov</u>, 742 N.E.2d 453, 457 (Ind. 2001).  In this case the State has failed to carry its burden.

## Conclusion

The judgment of the trial court is affirmed in part and reversed in part.  This cause is remanded.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.