

IN THE

# Court of Appeals of Indiana

Citizens Action Coalition of Indiana,

*Appellant-Intervenor*

v.

Duke Energy Indiana, LLC, and Indiana Utility Regulatory Commission,

*Appellees-Petitioner and Administrative Agency*



FILED

Aug 26 2025, 10:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

August 26, 2025

Court of Appeals Case No.
24A-EX-1348

Appeal from the Indiana Utility Regulatory Commission

The Honorable James F. Huston, Chairman

The Honorable Wesley R. Bennet, Sarah E. Freeman, David E. Veleta, David E. Ziegner, Commissioners

The Honorable Jennifer L. Schuster, Senior Administrative Law Judge

IURC Cause No. 45940

**Mathias, Judge.**

[1] Citizens Action Coalition of Indiana, Inc. appeals a decision of the Indiana Utility Regulatory Commission ("IURC") allowing Duke Energy Indiana, LLC to increase utility rates on Hoosiers so Duke Energy will recoup costs to clean up toxic coal ash in Indiana created by Duke Energy's fossil-fuel-based services. Citizens Action Coalition raises two issues for our review, and the IURC and Duke Energy raise an additional issue for our review. We consolidate and restate the parties' issues as the following two issues:

> 1. Whether Citizens Action Coalition, which is an association of members that have shared energy and environmental concerns with at least some of those members also being Duke Energy customers, has standing to challenge the IURC's decision.
>
> 2. Whether the IURC erred as a matter of law when it concluded that the amended version of Indiana Code chapter 8-1-8.4, which has the relevant effective date of March 22, 2023, applies to Duke Energy's costs of complying with federal mandates promulgated in 2015.

[2] We hold that a direct injury to a member of an association is a direct injury to the association itself when that injury is related to the purposes of the association, and, therefore, Citizens Action Coalition has standing to prosecute this appeal. We also hold, as a matter of first impression, that the IURC

impermissibly applied the relevant Indiana statutes retroactively when it permitted Duke Energy to increase rates on Hoosiers to recover costs to comply with federal mandates that were promulgated prior to the effective date of those statutes.

[3] Accordingly, we reverse the IURC's decision for Duke Energy and remand with instructions.

## Facts and Procedural History

[4] Citizens Action Coalition is an Indiana nonprofit membership organization whose members include "organizations, churches, labor unions, and senior groups." Addend. to Reply Br. at 29.[1] Membership in Citizens Action Coalition is based at least in part on shared interests of the members in "protecting utility ratepayers and advocating for affordable healthcare and a clean environment." *Id.* One of Citizens Action Coalition's purposes is to "advocate[] to lower ratepayers' bills with a particular focus on residential ratepayers, and individuals join [Citizens Action Coalition] not only to support but to personally benefit from those efforts." *Id.* Although Citizens Action Coalition is

---

[1] The issue of Citizens Action Coalition's possible lack of standing was first raised by the IURC and Duke Energy in their briefs to our Court. Over Duke Energy's objection, our motions panel permitted Citizens Action Coalition to submit verified materials to support its responsive argument in its Reply Brief that it has standing. Our motions panel's decision to permit Citizens Action Coalition to submit those materials to our Court is consistent with Indiana Supreme Court practice when standing is raised for the first time on appeal. *See Solarize Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 182 N.E.3d 212, 216 n.1 (Ind. 2022).

not itself a Duke Energy customer, it "has more than 700 members who are Duke Energy Indiana ratepayers . . . ." *Id.* at 30.

[5] In 2015, the United States Environmental Protection Agency ("EPA") promulgated new rules for treating and disposing of coal ash, a harmful byproduct of Duke Energy's fossil-fuel-based services in Indiana. After the EPA promulgated its rules, Duke Energy began incurring costs to bring its treatment and disposal of coal ash in Indiana into federal compliance.

[6] In July 2019, Duke Energy filed an application with the IURC to increase its rates on its Indiana customers so that Duke Energy could recover the costs it had incurred between 2015 and 2018 for bringing its treatment and disposal of coal ash into federal compliance (as well as other costs going back to 2010). In a related filing, Duke Energy sought to increase its rates for compliance costs that started in 2018 and for expected costs through 2028. The IURC granted both of Duke Energy's requests.

[7] Our Supreme Court reversed the IURC's decision to allow Duke Energy to recoup its costs for past expenditures between 2015 and 2018. *Ind. Off. Util. Consumer Couns. v. Duke Energy Ind., LLC*, 183 N.E.3d 266, 267 (Ind. 2022) ("*Duke Energy I*"). Our Supreme Court noted that Indiana Code section 8-1-2-68 does not allow for "retroactive ratemaking," which includes future rate adjustments for losses that occurred during a period in which a rate order had already been adjudicated. *Id.* at 268-70. Duke Energy's costs for the 2015 to 2018 time period had already been adjudicated by a prior rate order, and, thus,

the IURC's decision to allow Duke Energy to recoup losses from that same time period violated the general prohibition against retroactive ratemaking. *Id.*

[8] Shortly after *Duke Energy I*, our Court heard the appeal of the IURC's decision to allow Duke Energy to recoup its costs from 2018 and 2019 as well as projected costs through 2028. *Ind. Off. of Util. Consumer Couns. v. Duke Energy Ind., LLC*, 204 N.E.3d 947 (Ind. Ct. App. 2023) ("*Duke Energy II*"). That appeal, unlike *Duke Energy I*, involved Indiana Code chapter 8-1-8.4 (2022) (the "Federal Mandate Statutes"), which, at the time, stated in relevant part that "an energy utility that seeks to recover federally mandated costs . . . must obtain from the [IURC] a certificate that states that public convenience and necessity *will* be served by a compliance project *proposed* by the energy utility" to bring the utility into compliance with the federal mandates. Ind. Code § 8-1-8.4-6(a) (2022) (emphases added). Noting that our General Assembly wrote the Federal Mandate Statutes in the future tense, we reversed the IURC's decision to grant Duke Energy's request for increased rates for past expenditures but affirmed the IURC's decision to allow Duke Energy to increase rates to cover projected costs going forward. *Duke Energy II*, 204 N.E.3d at 957.

[9] While the appeal in *Duke Energy II* was pending before our Court, Duke Energy filed a third application with the IURC in IURC Cause Number 45749. Duke Energy's third application sought additional rate increases based on new estimates of its projected future costs to comply with the 2015 federal mandates. Citizens Action Coalition intervened in Duke Energy's third case before the

IURC and argued that Duke Energy was seeking to have the IURC engage in retroactive ratemaking. *See* Appellant's App. Vol. 2, p. 34.

[10] However, about one month after our Court's decision in *Duke Energy II*, our General Assembly amended the Federal Mandate Statutes with the relevant effective date of March 22, 2023. In particular, Indiana Code section 8-1-8.4-6(a) (2023) now provides that "an energy utility that seeks to recover federally mandated costs . . . must obtain from the commission a certificate that states that public convenience and necessity *is served by the energy utility's compliance project*." (Emphasis added.) And Indiana Code section 8-1-8.4-7(b)(2) (2023) now allows the IURC to "approve[] . . . incurred . . . costs associated with [an energy utility's federal] compliance project . . . ."

[11] In light of that amended language, in August 2023 Duke Energy filed a new, fourth application with the IURC in IURC Cause Number 45940. In its fourth application, Duke Energy sought to pass along to Hoosiers approximately $62 million in costs it had incurred between 2019 and 2022 to bring its treatment and disposal of coal ash into compliance with the EPA's 2015 rules; approximately $26 million in costs throughout 2023; and some additional $238 million in projected costs between 2024 and 2030. Ex. Vol. 6, p. 158. Duke Energy also moved to dismiss its third application without prejudice, which motion the IURC granted.

[12] Citizens Action Coalition intervened in Duke Energy's fourth case and argued that Duke Energy's request improperly sought to apply the amended Federal

Mandate Statutes retroactively. After an evidentiary hearing, the IURC concluded that the amended Federal Mandate Statutes were applicable because Duke Energy's fourth application was filed after the effective date of those statutes and before the relevant federally mandated compliance dates. *See* Appellant's App. Vol. 2, p. 26. Accordingly, the IURC granted Duke Energy's request to increase rates to recover its prior costs and to cover its projected costs.

[13] This appeal ensued.

## 1. Citizens Action Coalition is an association of its members, and a direct injury to one of its members that is related to the association's purpose is a direct injury to Citizens Action Coalition.

[14] On appeal, we first address the argument made by both the IURC and Duke Energy that Citizens Action Coalition lacks standing to appeal the IURC's decision. As our Supreme Court has explained:

> Indiana's constitution imposes structural limits on the exercise of judicial power. Although our constitution lacks the "case or controversy" requirement found in Article III of the United States Constitution, our separation-of-powers clause, Ind. Const. art. 3, § 1, fulfills a similar function. Standing is a significant restraint on the ability of Indiana courts to act, as it denies the courts any jurisdiction absent an actual injured party participating in the case. Indiana law is clear that standing requires an injury, which is met if the party shows it has suffered or is in immediate danger of suffering a direct injury as a result of the complained-of conduct.

*Hoosier Contractors, LLC v. Gardner*, 212 N.E.3d 1234, 1238 (Ind. 2023) (citation modified). Whether a party has standing is a legal question that we review de novo. *Id.*

[15] Indiana Code section 8-1-3-1 provides in relevant part that:

> Any person, firm, association, corporation, limited liability company, city, town, or public utility *adversely affected* by any final decision, ruling, or order of the commission may, within thirty (30) days from the date of entry of such decision, ruling, or order, appeal to the court of appeals of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions . . . .

(Emphasis added.) Our Supreme Court has held that that statute "prescribes the standing requirements" for a party to appeal an IURC decision. *Solarize Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 182 N.E.3d 212, 218 (Ind. 2022). And, for a party to show that it has been "adversely affected" under that statute, the party must satisfy our constitutional standing requirements, that is, it must show, as relevant here, that it has "sustained or is in immediate danger of sustaining a direct injury as a result of the order." *Id.* (quotation marks omitted); *see also Hoosier Contractors, LLC*, 212 N.E.3d at 1238.

[16] We agree with Citizens Action Coalition that it has associational standing to pursue this appeal. As another panel of our Court recently explained, associational standing traces back to *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977). *Individual Members of Med. Licensing Bd. v.*

*Anonymous Plaintiff 1*, 233 N.E.3d 416, 433 (Ind. Ct. App. 2024), *trans. denied*.

Under *Hunt*:

> an organization has standing to raise the claims of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* (quoting *Hunt*, 432 U.S. at 343).

[17] The Indiana Supreme Court has neither adopted nor rejected the doctrine of associational standing. *See id.* But three different panels of our Court have expressly and unanimously adopted it. *See id.* (citing cases). The doctrine is also prevalent among the states and within the federal judiciary. *See id.* (citing cases). It is especially compelling that the federal judiciary, which is generally limited by the subject matter of federal law, *see* U.S. Const. art. I, the "case and controversy" requirement of Article III of the U.S. Constitution, and the reservation of undelegated powers to the States or the People, *see* U.S. Const. amend. X, has adopted associational standing. The federal judiciary with its expressly limited reach has no qualms with associational standing; neither should Indiana's broader, plenary judiciary.

[18] We also recognize, along with prior panels of this Court that have considered the issue, that "associational standing has broad benefits." *Individual Members of Med. Licensing Bd.*, 233 N.E.3d at 434. As Judge Weissmann recently summarized:

> Allowing an association to represent its members' interests promotes judicial economy and efficiency. Clothed in associational standing, a single plaintiff, in a single lawsuit, may adequately represent the interests of many members, avoiding repetitive and costly independent actions. The association's members who have individual standing, in turn, may pool their financial resources and legal expertise to help ensure complete and vigorous litigation of the issues. A third recognized benefit is that associations are generally less susceptible than individuals to retaliations by officials responsible for executing the challenged policies.

(Quotation marks, brackets, and citations omitted.)

[19] Citizens Action Coalition has associational standing here. Although Citizens Action Coalition itself is not a Duke Energy customer, many of its members are, and those members have joined in the association of Citizens Action Coalition because, among other possible reasons, they share common interests in protecting utility ratepayers in Indiana. Further, one of Citizens Action Coalition's purposes is to "advocate[] to lower ratepayers' bills with a particular focus on residential ratepayers," and individuals join in the membership of Citizens Action Coalition "not only to support but to personally benefit from those efforts." Addend. to Reply Br. at 29. In the language of *Hunt*, Citizens Action Coalition members who are also Duke Energy customers would have standing to bring this appeal in their own right; the interests Citizens Action Coalition seeks to protect are germane to the organization's purpose; and neither the arguments asserted on appeal nor the relief requested requires the participation of the individual members. In the language of Indiana's

established law of standing, a direct injury to an association member that is related to that association's purpose *is* a direct injury to the association.

[20] The IURC's and Duke Energy's assertions that Citizens Action Coalition lacks standing would result in all the same arguments and evidence still being presented but in the name of specific members of Citizens Action Coalition rather than in the name of Citizens Action Coalition itself. Those members are part of Citizens Action Coalition and have joined Citizens Action Coalition for the exact purpose that Citizens Action Coalition has intervened in these proceedings—to protect Indiana utility ratepayers from possible illegal charges. The position of the IURC and Duke Energy thus preferences form over substance that the Indiana Constitution does not demand in the context of an association and its members. In other words, the doctrine of associational standing does not undermine the Indiana Constitution's restraint on the exercise of judicial power as embodied in the law of standing. Accordingly, we hold that Citizens Action Coalition has associational standing to pursue this appeal.

## 2. The triggering event for the Federal Mandate Statutes is the imposition of a federal mandate on an Indiana energy utility; as those mandates here were imposed well before the effective date of the amended statutes, the IURC impermissibly applied those statutes retroactively.

[21] We thus turn to the merits of this appeal, namely, whether the IURC improperly applied the amended Federal Mandate Statutes retroactively, which

presents an issue of statutory interpretation that we review de novo.[2] *See Church v. State*, 189 N.E.3d 580, 585 (Ind. 2022). As our Supreme Court has explained:

> The controlling question at issue is one of law, on which we owe the [IURC] no deference. When interpreting an unambiguous statute, we accord words their plain meaning. When reviewing an ambiguous provision in a statute, the primary goal is to determine, give effect to, and implement the intent of the Legislature with well-established rules of statutory construction. We do not presume that the Legislature intended language to be used in a statute to be applied illogically or to bring about an unjust or absurd result.

*Ind. Off. of Util. Consumer Couns. v. S. Ind. Gas & Elec. Co.*, 200 N.E.3d 915, 919 (Ind. 2023) (quotation marks, brackets, and citations omitted). We generally do not apply a statute retroactively "absent explicit language to the contrary." *Church*, 189 N.E.3d at 587. There is no explicit language in the amended Federal Mandate Statutes that they should apply prior to the March 22, 2023, effective date.

[22] We determine if a statute has been applied retroactively as follows:

> The critical first step in the retroactivity inquiry is identifying the conduct or event that triggers the statute's application. Once properly identified, the triggering event guides the analysis. A court must look to the subject matter regulated by the statute and consider its plain language to determine the precipitating or triggering event, and the proper triggering event is that which the

---

[2] Citizens Action Coalition also argues that the IURC's order is insufficiently detailed. We disagree and do not consider that argument further.

statute intends to regulate. Thus, a statute is prospectively applied when it is applied to the operative event specified by the statute, and the event occurred after the date the statute became effective. . . .

*Id.* at 587 (quotation marks, brackets, and citations omitted).

[23]     Relatedly, as our Supreme Court explained in *Duke Energy I*:

Indiana Code section 8-1-2-68 provides: "Whenever . . . the commission shall find any rates . . . to be unjust, unreasonable, [or] insufficient . . . , the commission shall determine and by order fix just and reasonable rates . . . to be imposed, observed, and *followed in the future*". Ind. Code § 8-1-2-68 (emphasis added). The parties agree the commission cannot set rates retroactively under section 8-1-2-68. Our case law likewise holds that retroactive ratemaking is invalid. *Pub. Serv. Comm'n v. City of Indianapolis*, 235 Ind. 70, 88, 131 N.E.2d 308, 315 (Ind. 1956). . . .

* * *

. . . In *City of Indianapolis*, we said that "[p]ast losses of a utility cannot be recovered from consumers nor can consumers claim a return of profits and earnings which may appear excessive." *Id.* at 315 (citation omitted). There we held that since a 1951 rate order had already been adjudicated, Indianapolis could not challenge that order as setting unreasonable rates in a 1954 proceeding. *Id.* at 309, 315. Relying in part on this precedent, the court of appeals explained in *City of Muncie v. Public Service Commission* that retroactive ratemaking includes "recoupment of actual operating losses not foreseen in the original rate-making process". 396 N.E.2d 927, 929 (Ind. Ct. App. 1979).

183 N.E.3d at 268-70 (omissions, alterations, and emphasis inside quotation marks all original to *Duke Energy I*).

[24] Generally speaking, the Federal Mandate Statutes establish a mechanism through which an energy utility in Indiana may seek to recover costs spent or projected to be spent in compliance with a federal mandate. *See* I.C. §§ 8-1-8.4-6 to -7 (2023). As we explained in *Duke Energy II*, the original versions of the Federal Mandate Statutes were written in the future tense and, thus, expressly required the IURC's preapproval of an energy utility's proposed compliance projects before the utility could seek to recover, by way of a rate adjustment, the costs of its compliance with a federal mandate. 204 N.E.3d at 957.

[25] One month after our decision in *Duke Energy II*, our General Assembly amended the Federal Mandate Statutes to remove the preapproval requirement with the relevant effective date of March 22, 2023. *See* I.C. § 8-1-8.4-6 (2023). In August 2023, Duke Energy filed the instant application to increase rates to recover costs it incurred dating back to 2019 as well as to cover projected costs through 2030 in order for Duke Energy to comply with the EPA's 2015 rules.

[26] We initially note that there is no dispute that the amended Federal Mandate Statutes reflect a legislative intent to allow an energy utility to recover some measure of already-incurred costs prior to the IURC's approval of a compliance project. Again, Indiana Code section 8-1-8.4-7(b)(2) expressly allows the IURC to "approve[] . . . incurred . . . costs associated with the compliance project," which, unlike the language at issue in *Duke Energy II*, is explicitly in the past

tense. The IURC and Duke Energy argue on appeal that this language demonstrates a legislative intent for the amended statutes to apply retroactively, but we cannot agree. This language demonstrates only a legislative intent to allow an energy utility to incur costs in compliance with a federal mandate and then seek to recover those costs from the IURC at a later date. There is nothing in this language reflecting a clear intent to apply the amended Federal Mandate Statutes before their March 22, 2023, effective date, which is the question of retroactivity.

[27] And whether Duke Energy's August 2023 application was a request to have the IURC apply the amended Federal Mandate Statutes retroactively is the issue here. To assess that issue, we must discern "the conduct or event that triggers" the application of the amended Federal Mandate Statutes to determine if the IURC in fact applied those statutes retroactively. *Church*, 189 N.E.3d 587. In doing so, we must "look to the subject matter" that is regulated by the statutes "to determine the precipitating or triggering event" that invokes their regulation. *Id.*

[28] We conclude that the conduct that triggers the application of those statutes is the same conduct that triggered the original versions of those statutes—a federal mandate on an Indiana energy utility. Once a federal mandate is imposed, the energy utility may *then* incur costs under the amended Federal Mandate Statutes, with or without prior IURC approval, and file an application with the IURC to adjust the utility's rates to account for its need to comply with the

federal mandate. I.C. § 8-1-8.4-7(a) (2023). But, in the absence of a federal mandate, the Federal Mandate Statutes are never triggered.

[29] Accordingly, we reject the position taken on appeal by the IURC and Duke Energy that it is not a federal mandate that triggers the statutes but the energy utility's application date with the IURC to increase rates. Any request to increase rates necessarily follows an antecedent and "precipitating" event of a federal mandate. *Church*, 189 N.E.3d at 587. Further, whether a statute applies retroactively turns on the "subject matter regulated by the statute," not on the procedural timing of when a party seeks to have its rights under the statute enforced. *Id.* (quotation marks omitted). The subject matter regulated by the amended Federal Mandate Statutes is an energy utility's need to comply with federal mandates, not the procedure through which the IURC assesses an energy utility's costs of compliance with those mandates. By way of analogy, under the IURC's and Duke Energy's procedural theory, a criminal statute's triggering event would not be an alleged offense but the date the State filed its charging information, which is not the law. *See, e.g.*, *Ackerman v. State*, 51 N.E.3d 171, 193 (Ind. 2016). Indeed, the IURC's position in its brief to our Court is that "this case arose after" the effective date of the amended Federal Mandate Statutes. IURC's Br. at 22. It plainly did not; it arose following the EPA's 2015 promulgation of the coal-ash-related rules and it has been ongoing for Duke Energy and the IURC ever since.

[30] We also reject the IURC's proposition that it is absurd to limit the amended Federal Mandate Statutes prospectively from March 22, 2023, because that

means a utility that filed an application in April 2023 would recover very little prior costs while a utility that files an application in April 2033 may recover a lot. *See id.* at 24. We disagree. Our General Assembly's decision not to make the amended Federal Mandate Statutes retroactive reflects a policy choice to have the transition between the original Federal Mandate Statutes and the amended statutes be negligible in the short term and increasingly meaningful over time. The IURC's contrary position, meanwhile, invites constant relitigation over rate costs relating to one time period, which is not a position favored by Indiana law. *See Duke Energy I*, 183 N.E.3d at 268 (discussing I.C. 8-1-2-68).

[31] The IURC does not defend its original assessment, in its order for Duke Energy, that the amended Federal Mandate Statutes are not being applied retroactively because Duke Energy's federal compliance dates have not yet passed. We think the reason for the IURC's abandonment of that position is straightforward—there can be no compliance date without an antecedent mandate, and, thus, it is the promulgation of the mandate itself that is the "precipitating event" that invokes the Federal Mandate Statutes. *Church*, 189 N.E.3d at 587. We also note that neither the IURC nor Duke Energy suggests that the triggering event for the amended Federal Mandate Statutes is a compliance-related expenditure, which is also a reasonable position by the parties because an application by a utility under the amended Federal Mandate Statutes may be based only on projected costs. *See* I.C. § 8-1-8.4-7(b)(2).

[32] Thus, the triggering event under both the original and the amended Federal Mandate Statutes is the imposition of a federal mandate on an Indiana energy utility. As our Supreme Court has made clear: "a statute operates prospectively when it is applied to the operative event of the statute, and that event occurs after the statute took effect." *Church*, 189 N.E.3d at 587-88. The original version of the Federal Mandate Statutes took effect in 2011, and the EPA rules at issue throughout *Duke Energy I*, *Duke Energy II*, and the instant appeal were promulgated in 2015. Thus, as to Duke Energy's attempts in *Duke Energy I* and *II* to adjust rates in response to its costs of complying with those rules, the statutes were operating prospectively: the statutory effective dates were in 2011 and the triggering events were in 2015. *Church*, 189 N.E.3d at 587-88.

[33] But that is not the case with Duke Energy's August 2023 application. That application is based on the same triggering event—the EPA's 2015 promulgation of its rules—but seeks to apply statutes that have the much later effective date of March 22, 2023. Accordingly, we agree with Citizens Action Coalition that Duke Energy's August 2023 application with the IURC to adjust rates under the amended Federal Mandate Statutes sought to apply those statutes retroactively.

[34] While the retroactive application of a statute is generally prohibited, there are exceptions to that rule. *See, e.g.*, *Martin v. State*, 774 N.E.2d 43, 44 (Ind. 2002). One exception is for certain remedial statutes, and Duke Energy argues that the amended Federal Mandate Statutes are remedial. Remedial statutes "are statutes intended to cure a defect or mischief that existed in a prior statute." *Id.*

"When a remedial statute is involved, a court must construe it to effect the evident purpose for which it was enacted." *Id.* (quotation marks and brackets omitted). However, "not all remedial statutes are automatically applied retroactively." *State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005). Rather, even if a statute is remedial, it "will normally be given prospective application" only "[u]nless there are strong and compelling reasons" to apply the statute retroactively. *Id.* at 920 (quotation marks omitted).

[35] Examples of remedial statutes that Indiana's judiciary has applied retroactively include statutory amendments to clarify a split opinion in our Court in the interpretation of expungement statutes, *see N.G. v. State*, 148 N.E.3d 971, 974-75 (Ind. 2020); to broaden the scope of who may obtain blood samples pursuant to a law enforcement investigation after our Court limited the relevant statute to its terms, *see Boston v. State*, 947 N.E.2d 436, 441-43 (Ind. Ct. App. 2011); to allow for broader recovery rights for injuries related to Indiana's underground storage tank laws, *see Bourbon Mini-Mart, Inc. v. Gast Fuel & Servs., Inc.*, 783 N.E.2d 253, 260-61 (Ind. 2003); and to clarify the availability of credit for time served on home detention as a condition of probation following a conflict of opinions from our Court, *see Martin*, 774 N.E.2d at 45. Each of those statutory amendments was in response to a prior statutory defect or mischief. Conversely, where a statutory amendment "d[oes] not clear up any confusion in a statute . . . or address silence in a statute," but instead simply "signal[s] a . . . change" in policy, the amendment "is not remedial." *Lawrence v. State*, 214 N.E.3d 361, 363 (Ind. Ct. App. 2023).

[36] Duke Energy's *only* argument as to why the amended Federal Mandate Statutes are remedial is that our General Assembly enacted those amendments on an emergency basis shortly after our opinion in *Duke Energy II*. As Duke Energy puts it, "[s]tatutes enacted in response to judicial decisions are remedial." Duke Energy's Br. at 27. But that is an incorrect statement of law and, indeed, has been all but expressly rejected by the Indiana Supreme Court. *See Pelley*, 828 N.E.2d at 919 (recognizing that the statutory amendment at issue was enacted in response to an opinion of our Court but nonetheless stating that "it is not at all clear to us that the . . . statute is remedial"). Statutory amendments in response to court decisions *might* be remedial, but, "[u]nder most circumstances, an amendment changing a prior statute indicates a legislative intention that the meaning of the statute has changed." *Woodruff v. Ind. Fam. & Soc. Servs. Admin.*, 964 N.E.2d 784, 795 (Ind. 2012) (quotation marks omitted). Without more, we cannot say that the statutes here were remedial and not simply a change in policy. *See Lawrence*, 214 N.E.3d at 363.

[37] In any event, it is not enough for Duke Energy to simply assert that the amended Federal Mandate Statutes are remedial. Even remedial statutes generally apply only prospectively unless there is a "strong and compelling" reason to apply them retroactively. *Pelley*, 828 N.E.2d at 920 (quotation marks omitted). Duke Energy provides no argument to our Court that such a strong and compelling reason exists here, even if the amended Federal Mandate Statutes are remedial and not simply reflective of a change in policy. *See* Ind. Appellate Rule 46(A)(8)(a). Nor is it obvious to our Court that allowing Duke

Energy to relitigate several hundred million dollars of its costs to comply with 2015 federal mandates is a matter that our General Assembly intended to retroactively require.

[38] Accordingly, we conclude that the IURC impermissibly applied the amended Federal Mandate Statutes retroactively to Duke Energy's August 2023 application. We therefore reverse the IURC's decision for Duke Energy and remand with instructions for the IURC to either reconsider Duke Energy's application in a manner that is consistent with this opinion or, if that is not possible, dismiss the application.

## Conclusion

[39] For all of these reasons, we reverse the IURC's decision for Duke Energy and remand with instructions.

[40] Reversed and remanded with instructions.

Bradford, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Jennifer A. Washburn
Citizens Action Coalition
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE DUKE ENERGY INDIANA, LLC

Elizabeth A. Heneghan
Liane K. Steffes
Duke Energy Business Services LLC
Plainfield, Indiana

Peter J. Rusthoven
Nicholas K. Kile
Lauren M. Box
Kian J. Hudson
Barnes & Thornburg LLP
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE INDIANA UTILITY REGULATORY COMMISSION

Beth E. Heline
General Counsel

Jeremy Comeau
Senior Assistant General Counsel
Indianapolis, Indiana

Theodore E. Rokita
Attorney General of Indiana

John R. Oosterhoff
Deputy Attorney General, Civil Appeals
Indianapolis, Indiana